STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 083013)
SHANNON E. DUDIC (State Bar No. 261135)
GEOFFREY L. WARNER (State Bar No. 305647)
2029 Century Park East
Los Angeles, CA 90067-3086
Telephone: 310.556.5800
Facsimile:  310.556.5959
Email:      *lacalendar@stroock.com*

Attorneys for Defendants
  HSBC CARD SERVICES INC. and HSBC TECHNOLOGY &
  SERVICES (USA) INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NICKLAUS LAL, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>CAPITAL ONE FINANCIAL CORPORATION, a corporation and as successor-in-interest and assignee of HSBC Card & Retail Services Inc. a/k/a HSBC Card Services Inc., a Delaware Corporation; HSBC CARD SERVICES INC., an entity of unknown form; HSBC TECHNOLOGY & SERVICES (USA) INC., a Delaware corporation; DOES 1 through 25, inclusive,<br><br>    Defendants. | Case No. 5:16-cv-06674-BLF<br><br>[Assigned to the Hon. Beth Labson Freeman]<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF DEFENDANTS HSBC CARD SERVICES INC. AND HSBC TECHNOLOGY & SERVICES (USA) INC. TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) OR, IN THE ALTERNATIVE, TO STRIKE DAMAGE ALLEGATIONS PURSUANT TO F.R.C.P. 12(f)**<br><br><u>Hearing</u>:<br>Date:  March 30, 2017<br>Time:  9:00 a.m.<br>Location: Courtroom 3<br><br>[Notice of Motion and Motion filed and [Proposed] Order lodged concurrently] |

It is well settled that courts "may take judicial notice of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); see, e.g., Sami v. Wells Fargo Bank, No. C-12-00108 DMR, 2012 WL 3204194, at *1 (N.D. Cal. Aug. 3, 2012) (granting request to take judicial notice of court-entered judgment). Similarly, courts may take judicial notice of reporter's transcripts of court hearings. Johnson v. Uribe, 700 F.3d 413, 424 (9th Cir. 2012) (taking judicial notice of reporter's transcript of oral proceedings regarding resentencing hearing in superior court); Pickup v. Brown, No. 2:12-CV-02497-KJM, 2012 WL 6024387, at *3 (E.D. Cal. Dec. 4, 2012) ("Transcripts from other court proceedings are proper subjects of judicial notice."); Benavides v. City of Arvin, No. F CV 12-0405 LJO GSA, 2012 WL 1910259, at *3 (E.D. Cal. May 25, 2012) (taking judicial notice of court reporter's transcript regarding change of plea). Such documents contain the type of facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2).

Accordingly, for the foregoing reasons, defendants HSBC Card Services Inc. and HSBC Technology & Services (USA) Inc. (collectively, "HSBC") respectfully request that the Court take judicial notice of the following documents submitted in support of HSBC's Motion to Dismiss Complaint Pursuant To F.R.C.P. 12(b)(6) Or, In The Alternative, To Strike Damages Allegations Pursuant To F.R.C.P. 12(f):

1.      The First Amended Complaint filed in Bailey v. Household Finance Corp. of California, et al., No. 3:10-cv-00857-WQH-RBB (S.D. Cal. June 7, 2010), ECF No. 14 (the "Bailey FAC"). A true and correct copy of the Bailey FAC is attached hereto as Exhibit A.

2.      The First Amended Complaint filed in Afrasiabi v. HSBC Bank Nevada, N.A., No. 3:12-cv-00685-MMA-DHB (S.D. Cal. Apr. 20, 2012), ECF No. 4 (the "Afrasiabi FAC"). A true and correct copy of the Afrasiabi FAC is attached hereto as Exhibit B.

3.      The Complaint filed in Fanning v. HSBC Card Services Inc., et al., No. 8:12-cv-00885-JVS-RNB (C.D. Cal. June 4, 2012), ECF No. 1 (the "Fanning Complaint"). A true and correct copy of the Fanning Complaint is attached hereto as Exhibit C.

LA 52027999

4.      The First Amended Complaint filed in <u>Medeiros v. HSBC Card Services Inc., et al.</u>, No. 3:14-cv-01786-JLS-MDD, (S.D. Cal.) ("<u>Medeiros</u>"), transferred to No. 2:15-cv-09093-JVS (AFMx) (C.D. Cal. Nov. 24, 2014), ECF No. 3 (the "<u>Medeiros</u> FAC").  A true and correct copy of the <u>Medeiros</u> FAC is attached hereto as Exhibit D.

5.      The Order Granting Joint Motion To Consolidate <u>Fanning</u> and <u>Lindgren</u> With <u>Medeiros</u>, filed in <u>Medeiros</u>, ECF No. 83 (the "Consolidation Order"), pursuant to which the <u>Fanning</u> and <u>Medeiros</u> actions were consolidated for settlement purposes.  A true and correct copy of the Consolidation Order is attached hereto as Exhibit E.

6.      The Order (1) Conditionally Certifying A Settlement Class, (2) Preliminarily Approving Class Action Settlement, (3) Approving Notice Plan And (4) Setting Final Approval Hearing in <u>Medeiros v. HSBC Card Services Inc., et al.</u>, <u>Fanning v. HSBC Card Services Inc., et al.</u>, and <u>Lindgren v. HSBC Card Services Inc., et al.</u>, filed in <u>Fanning v. HSBC Card Services Inc., et al.</u>, No. 8:12-cv-00885- JVS-RNB (C.D. Cal. Oct. 19, 2016), ECF No. 364 (the "Preliminary Approval Order").  A true and correct copy of the Preliminary Approval Order is attached hereto as Exhibit F.

7.      The Order granting HSBC's Motion for Summary Judgment in <u>Ron Kempton, et al. v. Capital One Financial Corporation</u>, No. 37-2014-00023795-CU-MC-NC (Cal. Super. Ct. Aug. 5, 2016) <u>sub nom.</u> <u>Dalia Rojas v. HSBC Card Services Inc., et al.</u>, No. D071442 (Cal. App. Ct. filed Nov. 18, 2016) (the "<u>Rojas</u> MSJ Order").  A true and correct copy of the <u>Rojas</u> MSJ Order is attached hereto as Exhibit G.

8.      The relevant excerpts of the certified reporter's transcript for the November 4, 2016 hearing of cross-defendant Alejandra Rojas' motion for summary judgment in <u>Ron Kempton, et al. v. Capital One Financial Corporation</u>, No. 37-2014-00023795-CU-MC-NC (Cal. Super. Ct. Aug. 5, 2016) <u>sub nom.</u> <u>Dalia Rojas v. HSBC Card Services Inc., et al.</u>, No. D071442 (Cal. App. Ct. filed Nov. 18, 2016) (the "Transcript").  A true and correct copy of the Transcript is attached hereto as Exhibit H.

9.      A true and correct copy of the order in <u>Yevgeniya Grania v. Eddie Bauer, LLC</u>, No. BC569111, slip. Op (Cal. Super. Ct. L.A. Cty. Dec. 2, 2015), attached hereto as Exhibit I.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

10. A true and correct copy of the order in <u>Furman v. Station Casinos LLC</u>, No. 56-2013-00446134-CU-BT-VTA (Cal. Super. Ct. Ventura Cty. March 11, 2014), attached hereto as Exhibit J.

Dated: December 20, 2016

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
SHANNON E. DUDIC
GEOFFREY L. WARNER

By:            */s/ Shannon E. Dudic*
_____
Shannon E. Dudic

Attorneys for Defendants
    HSBC CARD SERVICES INC. and HSBC
    TECHNOLOGY & SERVICES (USA) INC.

LA 52027999

# EXHIBIT A

1  ARLEO LAW FIRM, PLC
   ELIZABETH J. ARLEO (CASB No. 201730)
2  1672 Main Street, Suite E, PMB 133
   Ramona, CA 92065
3  Telephone: 760/789-8000
   760/789-8081 (fax)
4  Email: elizabeth@arleolaw.com

5  THE CONSUMER LAW GROUP
   Alan M. Mansfield (SBN 125998)
6  9466 Black Mountain Rd., Suite 225
   San Diego, CA 92126
7  Tel: (619) 308-5034
   Fax: (888) 341-5048
8
   Attorneys for Plaintiff
9

10              **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12 | DEBRA ANN BAILEY, both individually and | ) | CASE NO.: 10-CV-0857-WQH (RBBx)
   | on behalf of all others similarly situated, | ) |
13 | | ) | CLASS ACTION
   | Plaintiff, | ) |
14 | | ) | FIRST AMENDED COMPLAINT FOR
   | vs. | ) | VIOLATIONS OF:
15 | | ) |
   | HOUSEHOLD FINANCE CORPORATION | ) | (1)   CALIFORNIA'S ROSENTHAL FAIR
16 | OF CALIFORNIA; HSBC FINANCE | ) |       DEBT COLLECTION PRACTICES
   | CORPORATION; HSBC CARD SERVICES | ) |       ACT, CAL. CIV. CODE, §1788, *ET*
17 | INC.; HSBC BANK NEVADA, N.A; and | ) |       *SEQ.;*
   | DOES 4 through 10, inclusive | ) |
18 | | ) | (2)   CALIFORNIA'S INVASION OF
   | Defendants. | ) |       PRIVACY ACT, CAL. PENAL CODE
19 | | ) |       §632, *ET SEQ.*;
   | _____ | ) |
20 |       |   | (3)   TELEPHONE CONSUMER
   |       |   |       PROTECTION ACT, 47 U.S.C. § 227,
21 |       |   |       *ET SEQ.;*
22 |       |   | (4)   CALIFORNIA'S UNFAIR
   |       |   |       COMPETITION LAW, CAL. BUS. &
   |       |   |       PROF. CODE §§17200, *ET SEQ.*
23 |       |   | JURY TRIAL DEMANDED
24
25
26
27
28

-1-

---
FIRST AMENDED CLASS ACTION COMPLAINT          Case No.: 10-CV-0857-WQH (RBBx)

1    Plaintiff Debra Ann Bailey ("Plaintiff") alleges as follows against defendants, Household

2  Finance Corporation of California ("HFC"), HSBC Finance Corporation ("HSBC") (previously

3  sued as DOE 1), HSBC Card Services Inc. (previously sued as DOE 2); HSBC Bank Nevada,

4  N.A. (previously sued as DOE 3),[1] and DOES 4-10, inclusive ("Defendants") on information and

5  belief, except where otherwise specifically indicated, formed after an inquiry reasonable under

6  the circumstances and which allegations are likely to have evidentiary support after an

7  opportunity for further investigation and discovery, as follows:

8                                **GENERAL ALLEGATIONS**

9         1.    This action arises out of Defendants' violations of California's Rosenthal Fair

10  Debt Collection Practices Act, California Civil Code §§1788-1788.32 ("CA FDCPA"), which

11  prohibits harassing debt collection practices, California's Invasion of Privacy Act, Cal. Penal

12  Code §630, *et seq.* ("CIPA"), which prohibits the recording of telephonic communications

13  without two-party consent, the federal Telephone Consumer Protection Act ("TCPA"), which

14  prohibits the use of an automated dialing system to call a consumer's cellular telephone number

15  without their express consent, and California's Unfair Competition Law, Cal. Bus. & Prof. Code

16  §17200, *et seq.* ("UCL"), which prohibits the commission of unlawful, unfair and fraudulent

17  business acts and practices.

18         2.    Plaintiff brings this action to challenge the misconduct of Defendants with regard

19  to Defendants' attempts, as part of what appears to be a pattern and practice, to unlawfully

20  collect on consumer loans allegedly due Defendants by virtue of the acts and practices detailed

21  herein, which caused Plaintiff and others to suffer injury in fact and a loss of money or property.

22         3.    Additionally, the CIPA prohibits the recording and/or monitoring of confidential

23  telephonic communications without first obtaining two-party consent at the initiation of the

24  telephone call.  Consumers, such as Plaintiff, are less likely to disclose personal information and

25  otherwise talk candidly with a creditor or debt collector via telephone if they are informed at the

26

27  [1]    Defendants HSBC Finance Corporation, HSBC Card Services Inc., and HSBC Bank

28  Nevada, N.A. are collectively referred to herein as "HSBC".

beginning of the telephone conversation that their call may be recorded and/or monitored.  As the substance of these communications involves a discussion of personal financial situations, Plaintiff expected these telephone communications be confined to the parties participating in the conversations and reasonably believed they would be treated as a confidential communication by both parties.  Plaintiff reasonably expected that her telephonic communications with Defendants would not be recorded without her express authorization at the beginning of the telephone communication.  In violation of CIPA, Defendants recorded and/or monitored Plaintiffs' and many Class members' telephone calls *without* their consent.  As HFC and HSBC have admitted, Defendants engage in a pattern and practice of monitoring and/or recording a substantial percentage of the telephonic communications with California customers.  A portion of these recorded and/or monitored telephonic communications are done without two-party consent as Defendants' representatives, in outgoing calls initiated by Defendants, fail to provide the advisory to California consumers that their confidential communications may be recorded and/or monitored.

4.     Finally, the TCPA prohibits the use of an automatic telephone dialing system to call any cellular telephone of a consumer without prior consent.  Defendants have adopted a policy and practice of making such calls.

5.     The actions, omissions, misrepresentations, practices and non-disclosures of Defendants as alleged herein constitute unlawful, unfair and fraudulent business practices in violation of Cal. Bus. & Prof. Code §17200, *et seq*.  Defendants have specifically engaged in "unlawful" business acts and practices by violating the CA FDCPA, CIPA and/or the TCPA, as well as committing "unfair" or "fraudulent" business acts and practices.  Defendants need only to have violated one of these provisions to be strictly liable therefor.

### JURISDICTION AND VENUE

6.     This Court has jurisdiction over all causes of action asserted herein pursuant to the Class Action Fairness Act and general principles of federal diversity jurisdiction as set forth in 28 U.S.C. §1332, as well as federal question jurisdiction pursuant to the TCPA claim as set forth in 28 U.S.C. §1331.  Plaintiff and other Class members are located in California.

-3-

1    According to Defendants, their businesses, executive offices and high-level decision-making are
2    located in Mettawa, Illinois.

3        7.    This Court has jurisdiction over the Defendants named herein, and California
4    consumer protection law properly applies to the transactions at issue, because each defendant, or
5    its agents or affiliates, is either a corporation operating under the laws of the State of California,
6    does substantial business in California, takes advantage of the opportunity of doing business in
7    California, has subjected itself to California's consumer protection laws by virtue of seeking the
8    benefits of operating in California, and otherwise initiates sufficient minimum contacts with
9    residents of California to render the exercise of jurisdiction and the application of California law
10   to it by this Court as permissible under traditional notions of fair play and substantial justice.

11       8.    Venue is proper in this Court because one or more of the Defendants either
12   maintain offices in this District, a portion of the transactions and wrongs complained of herein,
13   including Defendants' participation in the wrongful acts detailed herein as against Plaintiff,
14   occurred in this District, and Defendants have received substantial compensation in this District
15   by doing business here and engaging in numerous activities that had an effect in this District.

16                           **PARTIES**

17       9.    On personal knowledge, Plaintiff, Debra Ann Bailey, is a natural person residing
18   in San Diego County, California.

19       10.    Defendant Household Finance Corporation of California ("HFC") is, and at all
20   relevant hereto times has been, a corporation with offices located throughout California,
21   including in this District, and with its designated principal office for customer communications
22   located in California.  HFC is authorized to do business in the State of California by being
23   licensed to operate as a California finance lender by the California Department of Corporations.

24       11.    Defendant HSBC Finance Corporation (formerly Household Finance
25   Corporation) (previously sued herein as DOE 1) is, and at all relevant times hereto has been, a
26   Delaware corporation registered to do business in the State of California, with its principal place
27   of business at 26525 N. Riverwoods Boulevard, Mettawa, Illinois 60045 and with its agent for
28   service of process located in Los Angeles, California.

12.     Defendant HSBC Card Services Inc. (previously sued herein as DOE 2) is, and at all relevant times hereto has been the U.S. consumer credit card segment of HSBC Finance Corporation, a Delaware corporation registered to do business in the State of California with its principal place of business at 26525 N. Riverwoods Boulevard, Mettawa, Illinois 60045 and with its agent for service of process located in Los Angeles, California.

13.     Defendant HSBC Bank Nevada, N.A. (previously sued herein as DOE 3) is a bank (formerly Household Bank (Nevada), N.A.) chartered under the Competitive Equality Banking Act of 1987 and is regulated by the Comptroller of the Currency, it is the credit card issuing and processing facility for HSBC Credit Card offering a range of MasterCard, Visa, American Express and Discover Card products.  At all relevant times hereto HSBC Bank Nevada, N.A. has been headquartered in Las Vegas, Nevada with its principal place of business located at 1111 North Town Center Drive, Las Vegas, Nevada 89144.

14.     While offering a wide variety of financial and insurance products, Defendants HFC and HSBC are in the business of providing consumer lending services through installment and revolving term loans, as well as credit cards.

15.     The use of Defendants' name in this Complaint also includes all agents, employees, officers, members, directors, successors, assigns, principals, sureties, subrogees, representatives and insurers of each Defendant.

16.     Defendants DOES 4 through 10 are persons, corporations, partnerships or other entities who have done or will do acts otherwise alleged in this Complaint.  Defendants DOES 4 through 10, inclusive, at all times mentioned herein, have acted and are continuing to act in concert with the named defendants, and each of them has participated in the acts and transactions referred to below and each of them is responsible for said acts and transactions.  The true names, roles and capacities of DOES 4 through 10, whether individual, corporate or otherwise, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names, and will identify them as further discovery and investigation warrants.

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No.: 10-CV-0857-WQH (RBBx)

17.    At all times herein mentioned each of the Defendants acted as the agent of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency or employment.

## FACTUAL ALLEGATIONS

18.    At all times material and relevant hereto, Plaintiff and Class members were allegedly obligated to pay a debt, and therefore are a "debtor", as that term is defined by Cal. Civ. Code §1788.2(h) of the CA FDCPA.

19.    At all times material and relevant hereto, Defendants are persons who, in the ordinary course of business, regularly, on behalf of themselves or others, engage in debt collection, and are, therefore, "debt collectors," as that term is defined by Cal. Civil Code §1788.2(c).

20.    At all times material and relevant hereto, Defendants are persons who extend consumer credit to debtors, and are, therefore, "creditors" as that term is defined by Cal. Civil Code §1788.2(i).

21.    On personal knowledge, Plaintiff is an individual residing within the State of California in the County of San Diego during the past four years.

22.    At all times relevant hereto, Defendants conducted business in the State of California.

23.    This case involves money, property or other equivalent, alleged to be due or owing from a natural person by reason of a consumer credit transaction, and therefore involves "debt(s)" as that term is defined by California Civil Code §1788.2(d).  As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civil Code §1788.2(f).

24.    On personal knowledge, sometime during 2007, Plaintiff received an unsecured personal loan from HFC in the approximate amount of $6,000.  The annual interest rate on the loan was 29% and monthly payments were $229.  During a two-year period, up to and including July 2009, Plaintiff consistently made monthly payments of $250 to HFC on this loan.

/ / /

-6-

25.     On personal knowledge, sometime in 2006 or 2007, HSBC sent unsolicited a credit card to Plaintiff.  She activated the HSBC credit card soon after receiving it.

26.     On personal knowledge, during 2009, due to financial difficulties arising from Plaintiff's medical problems and loss of income from her employment, Plaintiff was unable to continue making her monthly payment on her HFC loan and HSBC credit card sometime in or about July 2009.

27.     As described in detail below, beginning in July 2009, Defendants persisted in a course of action in making hundreds of telephone calls to Plaintiff, mainly on her cellular telephone but also to her land line home phone, in an attempt to coerce her to make payments on her loans.

28.     During this time period, rather than work with her in a time of personal crisis and despite her actually being ahead overall on the payments for her loan, Defendants telephoned Plaintiff from 6 to 12 occasions *per day*, including but not limited to the occasions listed below. On multiple occasions, Plaintiff spoke with HFC and HSBC representatives and explained to them her personal financial circumstances and her willingness to work with HFC.  Yet even after these calls, the daily automated harassment by Defendants as detailed below persisted.  Even after HFC and HSBC were aware Plaintiff had filed this action and/or the parties had worked out a reduced monthly payment schedule, Defendants' automated telephone systems still continued to harass Plaintiff with multiple telephone calls to both her cellular and home phone.

**Calls by HFC to Plaintiff**

29.     On September 2, 2009, HFC caused Plaintiff's cellular telephone to ring at least *six* times, including but not limited to, telephone calls made by HFC at 8:16 a.m., 11:42 a.m., 3:44 p.m., 5:16 p.m., 7:14 p.m., and 8:03 p.m.

30.     On September 3, 2009, HFC caused Plaintiff's cellular telephone to ring at least *eight* times, including but not limited to, telephone calls made by HFC at 8:07 a.m., 10:04 a.m., 11:42 a.m., 3:47 p.m., 5:15 p.m., 6:22 p.m., 7:27 p.m. and 8:05 p.m.

/ / /

/ / /

1  31.    On September 4, 2009, HFC caused Plaintiff's cellular telephone to ring at least

2  *six* times, including but not limited to, telephone calls made by HFC at 8:15 a.m., 10:34 a.m.

3  1:58 p.m., 5:41 p.m., 6:52 p.m. and 8:21 p.m.

4  32.    On September 5, 2009, HFC caused Plaintiff's cellular telephone to ring at least

5  *six* times, including but not limited to, telephone calls made by HFC at 8:02 a.m., 9:36 a.m.,

6  11:47 a.m., 1:53 p.m., 5:58 p.m. and 7:54 p.m.

7  33.    On September 7, 2009, HFC caused Plaintiff's cellular telephone to ring at least

8  *eight* times, including but not limited to, telephone calls made by HFC at 8:09 a.m., 9:46 a.m.,

9  11:43 a.m., 12:27 p.m., 2:09 p.m., 4:48 p.m., 6:06 p.m. and 8:17 p.m.

10  34.    On September 8, 2009, HFC caused Plaintiff's cellular telephone to ring at least

11  *six* times, including but not limited to, telephone calls made by HFC at 8:04 a.m., 10:06 a.m.,

12  11:43 a.m., 3:56 p.m., 6:38 p.m. and 8:17 p.m.

13  35.    On September 9, 2009, HFC caused Plaintiff's cellular telephone to ring at least

14  *ten* times, including but not limited to, telephone calls made by HFC at 8:01 a.m., 9:53 a.m.,

15  10:42 a.m., 11:46 a.m., 12:43 p.m., 2:02 p.m., 3:39 p.m., 5:18 p.m., 7:13 p.m. and 8:26 p.m.

16  36.    On September 10, 2009, HFC caused Plaintiff's cellular telephone to ring at least

17  *six* times, including but not limited to, telephone calls made by HFC at 8:19 a.m., 11:47 a.m.,

18  1:26 p.m., 3:54 p.m., 6:29 p.m. and 8:21 p.m.

19  37.    On September 11, 2009, HFC caused Plaintiff's cellular telephone to ring at least

20  *six* times, including but not limited to, telephone calls made by HFC at 8:11 a.m., 11:31 a.m.,

21  2:33 p.m., 4:46 p.m., 6:54 p.m. and 8:17 p.m.

22  38.    On September 12, 2009, HFC caused Plaintiff's cellular telephone to ring at least

23  *six* times, including but not limited to, telephone calls made by HFC at 8:03 a.m., 10:18 a.m.,

24  11:49 a.m., 4:07 p.m., 6:17 p.m., and 8:11 p.m.

25  39.    On September 14, 2009, HFC caused Plaintiff's cellular telephone to ring at least

26  *six* times, , including but not limited to, telephone calls made by HFC at 8:08 a.m., 10:34 a.m.,

27  11:23 a.m., 4:33 p.m., 6:46 p.m., and 8:09 p.m.

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT          Case No.: 10-CV-0857-WQH (RBBx)

40.     On September 15, 2009, HFC caused Plaintiff's cellular telephone to ring at least *six* times, including but not limited to, telephone calls made by HFC at 8:02 a.m., 9:554 a.m., 11:43 a.m., 3:56 p.m., 6:37 p.m. and 8:06 p.m.

41.     On September 16, 2009, HFC caused Plaintiff's cellular telephone at least *five* times, including but not limited to, telephone calls made by HFC at 8:07 a.m., 11:42 a.m., 2:47 p.m., 7:01 p.m. and 8:06 p.m.

42.     On September 17, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:18 a.m., 11:36 a.m., 3:51 p.m., 7:04 p.m. and 8:09 p.m.

43.     On September 18, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:08 a.m., 11:42 a.m., 4:18 p.m., 7:02 p.m. and 8:06 p.m.

44.     On September 19, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:12 a.m., 11:48 a.m., 3:49 p.m., 7:01 p.m. and 8:09 p.m.

45.     On September 21, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:03 a.m., 11:42 a.m., 3:16 p.m., 7:05 p.m. and 8:11 p.m.

46.     On September 22, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:07 a.m., 11:40 a.m., 4:37 p.m., 7:03 p.m. and 8:04 p.m.

47.     On September 23, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:13 a.m., 11:43 a.m., 4:57 p.m., 7:05 p.m. and 8:09 p.m.

48.     On September 24, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:04 a.m., 11:40 a.m., 4:23 p.m., 7:01 p.m. and 8:08 p.m.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No.: 10-CV-0857-WQH (RBBx)

49.     On September 25, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:11 a.m., 11:37 a.m., 4:56 p.m., 6:31 p.m. and 8:18 p.m.

50.     On September 26, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:07 a.m., 11:27 a.m., 3:47 p.m., 6:21 p.m. and 8:02 p.m.

51.     On September 28, 2009, HFC caused Plaintiff's cellular telephone to ring at least *seven* times, including but not limited to, telephone calls made by HFC at 8:05 a.m., 9:52 a.m., 11:40 a.m., 2:43 p.m., 4:13 p.m., 6:59 p.m. and 8:07 p.m.

52.     On September 29, 2009, HFC caused Plaintiff's cellular telephone to ring at least *nine* times, including but not limited to, telephone calls made by HFC at 8:04 a.m., 9:45 a.m., 11:42 a.m., 1:21 p.m., 3:35 p.m., 4:33 p.m., 5:36 p.m., 6:13 p.m. and 8:14 p.m.

53.     On September 30, 2009, HFC caused Plaintiff's cellular telephone to ring at least *six* times, including but not limited to, telephone calls made by HFC at 8:05 a.m., 11:34 a.m., 1:43 p.m., 4:16 p.m., 6:04 p.m. and 8:07 p.m.

54.     On October 5, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:16 a.m., 11:40 a.m., 6:06 p.m., 7:03 p.m. and 8:08 p.m.

55.     On October 6, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:07 a.m., 11:44 a.m., 6:02 p.m., 7:12 p.m. and 8:06 p.m.

56.     On October 7, 2009, HFC caused Plaintiff's cellular telephone to ring at least *five* times, including but not limited to, telephone calls made by HFC at 8:09 a.m., 11:40 a.m., 6:01 p.m. 7:06 p.m. and 8:06 p.m.

57.     On April 8, 2010, HFC called Plaintiff's work at 1:14 p.m.  Plaintiff was unable to take the call.

58.     On April 8, 2010, HFC called Plaintiff's cellular telephone five times at 9:18 a.m., 11:48 a.m., 2:43 p.m., 4:27 p.m. and 6:12 p.m.

-10-

59.     On April 9, 2010, HFC called Plaintiff's cellular telephone six times at: 8:12 a.m., 10:17 a.m., 1:23 p.m., 3:07 p.m., 5:27 p.m. and 7:36 p.m.

60.     On April 10, 2010, HFC called Plaintiff's cellular telephone nine times at: 8:21 a.m., 9:34 a.m., 10:54 a.m., 11:12 a.m., 11:34 a.m., 12:52 p.m., 3:15 p.m., 3:43 p.m. and 4:14 p.m.   Plaintiff answered her telephone on three of these occasions; twice the line was disconnected when Plaintiff answered.  On the other occasion at 9:34 a.m., Plaintiff told the HFC representative that she was represented by counsel and that he should not be talking with her. The HFC representative appeared to ignore her request, because he continued to make statements seeking to collect the alleged debt.

**Calls by HSBC to Plaintiff**

61.     Defendant HSBC has also telephoned Plaintiff on numerous occasions, including subsequent to the filing of this lawsuit.

62.     On April 7, 2010 at 2:47 p.m. HSBC telephone Plaintiff at her work.  Plaintiff answered the telephone, informed the HSBC representative that she could not take personal calls at work and then disconnected the call.

63.     On April 11, 2010, HSBC called Plaintiff's cellular telephone *six* times at: 8:11 a.m., 10:22 a.m., 1:37 p.m., 3:52 p.m., 5:57 p.m., and 7:32 p.m.

64.     On April 12, 2010, HSBC called Plaintiff's cellular telephone *four* times at: 8:32 a.m., 10:47 a.m., 12:32 p.m., and 3:59 p.m.

65.     On April 12, 2010, HSBC called Plaintiff's home telephone at 8:48 p.m.

66.     On April 13, 2010, HSBC called Plaintiff's cellular telephone *two* times at: 12:30 p.m., 4:12 p.m.

67.     On April 13, 2010, HSBC called Plaintiff's home telephone *four* times at: 8:44 a.m., 4:13 p.m., 6:19 p.m. and 8:09 p.m.

68.     On April 14, 2010, HSBC called Plaintiff's home telephone at 8:16 p.m.

69.     On April 15, 2010, HSBC called Plaintiff's home telephone *three* times at: 8:38 a.m., 7:56 p.m., and 8:53 p.m.

70.     On April 15, 2010, HSBC called Plaintiff's cellular telephone at 3:35 p.m.

-11-

71.     On April 17, 2010, HSBC called Plaintiff's home telephone at 12:59 p.m.

72.     On April 17, 2010, HSBC called Plaintiff's cellular telephone *two* times at: 11:33 a.m. and 12:59 p.m.

73.     On April 18, 2010, HSBC called Plaintiff's home telephone *two* times at: 8:30 a.m., 10:49 a.m.

74.     On April 18, 2010, HSBC called Plaintiff's cellular telephone *four* times at: 10:48, 12:45 p.m., 5:11 p.m., 5:33 p.m.

75.     On April 19, 2010, HSBC called Plaintiff's cellular telephone *three* times at: 10:31 a.m., 1:36 p.m., and 3:54 p.m.

76.     On April 21, 2010, HSBC called Plaintiff's cellular telephone *three* times at 12:46 p.m., 3:01 p.m., 5:10 p.m.

77.     On April 21, 2010, HSBC called Plaintiff's home telephone at 7:24 p.m. and 8:47 p.m.

78.     On April 22, 2010, HSBC called Plaintiff's home telephone at 8:49 a.m.7:24 p.m. and 8:47 p.m.

79.     On April 22, 2010, HSBC called Plaintiff's cellular telephone at 4:57 p.m.

80.     On April 26, 2010, HSBC called Plaintiff's cellular telephone at 1:11 p.m.

81.     On April 26, 2010, HSBC called Plaintiff's home telephone at 6:42 p.m.  The HSBC representative, who identified himself as "Anthony", stated that he was calling from the Philippines on behalf of HSBC Card Services.  At no time did the HSBC representative provide the advisory that HSBC's telephonic communication was being recorded and/or monitored.

82.     On May 1, 2010, HSBC called Plaintiff's home telephone at 8:19 a.m.  The HSBC representative, who identified herself as "Sarah Taylor", stated that she was calling from South Dakota, in reference to Plaintiff's HSBC credit card account and seeking to collect allegedly delinquent payments.  At no time did the HSBC representative provide the advisory that HSBC's telephonic communication was being recorded and/or monitored.

83.     When Plaintiff responded to several of these calls and spoke with Defendants' representatives (which took place on multiple occasions), Defendants were secretly recording

-12-

and/or monitoring these confidential telephonic communications.  For example, on October 8, 2009 at approximately 8:00 p.m., Plaintiff received a telephone call from HFC.  While speaking to the representative, Plaintiff inquired whether HFC was recording their confidential communications.  The HFC representative responded affirmatively.  This recording was done without Plaintiff's consent, and up until that time Plaintiff had no reason to know or discover such calls were being recorded.  At no time did Plaintiff either expressly or implicitly consent to the recording or receive an advance advisory at the time the call was initiated that this telephone call would be recorded.  The original HFC representative subsequently transferred Plaintiff's call to a supervisor on the basis that the transfer was the only way to assure Plaintiff that the call would not continue to be recorded and/or monitored.

84.     On October 15, 2009, Plaintiff sent a letter via Certified Mail Return Receipt to HFC, P.O. Box 60101, City of Industry, CA 91716-0101, notifying HFC that the secret tape recording and monitoring of HFC's telephonic conversations with Plaintiff were not authorized, that recordings were made without her consent, and that HFC did not inform Plaintiff that the telephonic communications could be recorded or monitored.  Plaintiff also requested copies of any and all conversations recorded by Defendants.

85.     HFC did not respond to Plaintiff's October 15, 2009 letter, nor apparently did it retain as evidence copies of these recorded conversations in order for it to verify Plaintiff's assertions.

86.     On January 15, 2010, Plaintiff's counsel sent a letter to the General Counsel of HSBC Finance Corporation, the parent company of HFC, informing it and HFC that HFC was violating Cal. Penal Code §630, *et seq.* by secretly recording the confidential telephonic communications between Plaintiff and HFC representatives without any advisory statement from HFC that the call may be recorded at the initiation of the telephone call.  The letter also informed Defendants of their apparent violations of the CA FDCPA and California's UCL, and requested that such conduct be stopped and all relevant communications preserved.

87.     HFC's Customer Relations Department responded to Plaintiff's counsel in a letter dated January 29, 2010.  Therein, HFC **admitted** that, as a matter of corporate policy and as

1   indicated by the pattern of calls set forth above, HFC initiates multiple telephone calls daily in

2   attempts to collect debts, that telephone calls "are randomly monitored for quality assurance",

3   and that confidential telephonic communications were and are "recorded", but that the recordings

4   were voluntarily made unavailable after an unspecified "record retention period".

5          88.    Defendants thus have admittedly persisted in a course of conduct against Plaintiff

6   and other similarly situated persons in a manner that violated the CA FDCPA and CIPA,

7   including but not limited to the following: (i) causing Plaintiff's and other consumers' telephones

8   to ring repeatedly and continuously; (ii) failing to inform Plaintiff and other consumers that

9   Defendants were monitoring and recording the confidential telephonic communications between

10  them without obtaining authorization or consent at the initiation of that call; (iii) recording and

11  monitoring confidential telephonic communications between them; and (iv) calling Plaintiff's

12  and Class members' cellular telephones without their advance authorization or consent.

13         89.    During the October 8, 2009 telephone call referenced above (the confidential

14  communication HFC admitted was recorded), the HFC representative demanded that Plaintiff

15  make a full monthly payment of $229, in order for her to qualify for a hardship program.  The

16  Hardship program would substantially reduce her monthly payment to approximately $115 and

17  interest rate to 6%.  Plaintiff told the representative that she would have to borrow the $229 to do

18  so.  The HFC representative indicated that the company did not care, and made it clear that doing

19  so would be the only way she could stop the multiple daily telephone calls, including the calls to

20  her cellular telephone.  Plaintiff was forced to borrow such monies and sent such monies to HFC

21  to stop such harassing calls.   In addition, Plaintiff has needed to pay additional amounts for

22  cellular telephone charges attributable to such calls, $100 to a bankruptcy attorney based on her

23  trying to determine if there was a way to stop such calls, and approximately $25 in mailing costs

24  to Defendants sending certified letters relating to such calls.  Plaintiff has thus suffered damage,

25  injury in fact and/or a loss of money or property as a result of the acts and practices of

26  Defendants detailed herein.

27  / / /

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No.: 10-CV-0857-WQH (RBBx)

**POLICIES AND PRACTICES COMPLAINED OF**

90.     It is the admitted policy and practice of Defendants to engage in telephonic communications with residents of the State of California and to record these confidential telephonic communications without advising such persons at the time of the initiation of such a call that such confidential telephonic communications are being recorded, in violation of California Penal Code §630, *et seq.*

91.     It is the admitted additional policy and practice of Defendants to telephone alleged debtors multiple times per day using an auto-dial system in an attempt to collect debts allegedly owed to Defendants, including calling Plaintiff and Class members on their cellular telephones without first obtaining their authorization and consent to do so.

92.     It is the admitted additional policy and practice of Defendants to use an automatic telephone dialing system to call their customers' cellular telephones without prior express consent.

**CLASS ALLEGATIONS**

93.     Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated, pursuant to the provisions of Fed. R. Civ. Proc. Rule 23(b)(1), (b)(2) and (b)(3).  For the CA FDCPA, CIPA, and TPCA claims, the class period is one year prior to the filing of this Complaint, except as that date may be extended by principles of discovery, estoppel or equitable tolling.  For the claims brought pursuant to California's Business & Prof. Code §17200, *et seq.*, the class period is four years prior to the filing of this Complaint, except as that date may be extended by principles of discovery, estoppel or equitable tolling.

94.     The classes that Plaintiff seeks to represent (collectively "the Class") are defined as:

> **Class A**:  All consumers who reside in California who Defendants caused their telephone to ring on multiple occasions in a day in an attempt to collect a debt;

/ / /

/ / /

/ / /

1

2

3

4

   **Class B**:  All consumers who reside in California whose confidential telephonic communications with Defendants were recorded without advising such persons at the time of the initiation of such a telephone call that such conversations were being recorded;

5

6

   **Class C**:  All consumers who reside in California who Defendants called using an automated calling system and called such consumers on their cellular telephone.

7

8

9

  95. Excluded from the Class are all managers and directors of Defendants and members of their immediate families, and the Court and legal counsel for either side, and all members of their immediate families.

10

11

  96. The identities of the Class members are either ascertainable from Defendants' records or can be identified by obtaining basic information from the Class members.

12

13

  97. This action has been brought and may properly be maintained as a class action because:

14

15

16

  a. ***Numerosity:*** The Class is so numerous that joinder of all members is impractical.  As close to 20% of HFC's total loan volume involves loans in California, there are likely more than 1,000 members of the Class.

17

18

19

  b. ***Common Questions Predominate:*** There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual Class members.  The principal issues are:

20

21

22

23

24

   i. Whether Defendants violated §1788.11(d)-(e) of the CA FDCPA by causing Class A members' telephones to ring repeatedly to annoy the person called, and by communicating by telephone or in person with such frequency as to be unreasonable and to constitute harassment of the debtor under the circumstances.

25

26

27

   ii. Whether Defendants violated §1788.17 of the CA FDCPA (incorporating 15 U.S.C. §1692d(5)) by causing a telephone to ring or engaging any member of Class A in telephone conversations

28

/ / /

1                repeatedly or continuously with intent to annoy, abuse, or harass any

2                person at the called number;

3          iii.  Whether Defendants violated §1788.17 of the CA FDCPA

4                (incorporating 15 U.S.C. §1692e and its subdivisions) by using any

5                false or misleading representation or deceptive means to collect or

6                attempt to collect any debt or to obtain information concerning a

7                consumer, specifically by surreptitiously recording telephonic

8                communications without the consumer's express consent;

9          iv.  Whether Defendants violated §1788.17 of the CA FDCPA

10              (incorporating 15 U.S.C. §1692f and its subdivisions) by using any

11              unfair or unconscionable means to collect or attempt to collect any

12              debt;

13          v.  Whether Defendants violated California's Invasion of Privacy Act

14              (Cal. Penal Code §632) by recording confidential telephonic

15              communications with Class B members without first obtaining the

16              consumer's consent at the initiation of the call; and

17         vi.  Whether Defendants violated 47 U.S.C. §227(b) by using an auto-dial

18              system to call Class C members' cellular telephone numbers without

19              their authorization or consent.

20      c.  ***Typicality:***  Based on the conduct described above, Plaintiff's claims are

21          typical of the claims of the members of the Class. Plaintiff and members of

22          the Class have similar claims and remedies arising out of Defendants'

23          common course of conduct complained of herein.

24      d.  ***Adequacy:***  Plaintiff will fairly and adequately protect the interests of the

25          members of the Class. Plaintiff is committed to vigorously litigating this

26          matter, and has retained counsel experienced in handling class claims and

27          claims involving unlawful debt collection practices. Neither Plaintiff nor

28      / / /

FIRST AMENDED CLASS ACTION COMPLAINT          Case No.: 10-CV-0857-WQH (RBBx)

1   Plaintiff's counsel have any irreconcilable conflicting interests that might

2   cause them not to vigorously pursue this claim.

3       e.  ***Superiority and Manageability:***  To the extent an element for certification of

4   such claims, a class action is superior to other available means for the fair and

5   efficient adjudication of this controversy on a group-wide basis since

6   individual joinder of all members would be impracticable.   Class action

7   treatment is manageable as it will permit a large number of similarly situated

8   persons to prosecute their common claims in a single forum simultaneously,

9   efficiently, and without the unnecessary duplication of effort and expense that

10   numerous individual actions would engender.   Furthermore, since individual

11   members' claims for damages are modest, the expenses and burdens of

12   litigating individual actions would make it difficult or impossible for

13   individual members of the Class to redress the wrongs done to them.

14   Important public interests will be served by addressing the matter as a class

15   action and substantial economies to the litigants and to the judicial system will

16   be realized, because Defendants have acted on grounds that generally apply to

17   the Class so that injunctive or declaratory relief is appropriate to the Class as a

18   whole.   The potential for varying, inconsistent or contradictory adjudications

19   will be avoided if this matter is litigated on a class-wide basis.

20   **FIRST CAUSE OF ACTION**

21   **(Violations of the California Fair Debt Collection Practices Act**<br>**Cal. Civil Code §§1788, *et seq.*)**

22   **(Against all Defendants)**

23       98.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint

24   as though fully stated herein.

25       99.    Defendants violated California Civil Code §1788.11(d)-(e) by causing Plaintiff's

26   and Class A members' telephones to ring repeatedly in a day to annoy the person called and by

27   communicating by telephone or in person with the debtor with such frequency as to be

28   unreasonable and to constitute harassment to the debtor under the circumstances.

1    100.    Defendants' violations of California Civil Code §1788.11 were willful,

2    intentional, unreasonable or negligent.

3    101.    Defendants violated California Civil Code §1788.17 by failing to comply with the

4    federal Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* in the following ways:

5    i.    by causing a telephone to ring or engaging any person in telephone

6    conversation repeatedly or continuously with intent to annoy, abuse, or

7    harass any person at the called number in violation of 15 U.S.C.

8    §1692d(5) (which is incorporated by §1788.17 of the CA FDCPA);

9    ii.    by using false or misleading representation or deceptive means to

10    collect or attempt to collect any debt or to obtain information

11    concerning a consumer, specifically by surreptitiously recording

12    telephonic communications in violation of 15 U.S.C. §1692e and its

13    subdivisions (which is incorporated by §1788.17 of the CA FDCPA);

14    iii.    by using any unfair or unconscionable means to collect or attempt to

15    collect any debt in violation of 15 U.S.C. §1692f and its subdivisions

16    (which is incorporated by §1788.17 of the CA FDCPA).

17    102.    As a result of the above-described violations of the CA FDCPA, Plaintiff and

18    Class A members are therefore entitled to recover actual damages from Defendants pursuant to

19    Cal. Civil Code §1788.30(a), statutory damages pursuant to Cal. Civil Code §1788.30(b), and

20    reasonable attorney's fees and costs pursuant to Cal. Civil Code §1788.30(c).

21    **SECOND CAUSE OF ACTION**

22    **(For Statutory Damages and Injunctive Relief Under**
**Calif. Penal Code §637.2(a)-(b) Based on Violations**

23    **of Calif. Penal Code §632)**
**(Against All Defendants)**

24

25    103.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint

26    as though fully stated herein.

27    / / /

28    / / /

-19-

104.   At all times relevant herein, Defendants' collection personnel, agents and employees have routinely communicated by telephone with Plaintiff and other Class B members who reside and are located in the State of California.

105.   At all times relevant herein, Defendants have made use of a software system that enables them to secretly record confidential telephone conversations between Defendants' representatives and Class B members while such members reside and are located in the State of California.

106.   Plaintiff and Class B members, as a party to a communication that discussed their personal financial circumstances, desired the communication be confined to the parties, as the circumstances of such conversations were such that the parties could reasonably expect that the communication was not being overheard or recorded without advance notification thereof.  It was thus reasonable to presume that Plaintiff and Class B members expected that the communications in question were confined to the parties at the time the communication was initiated by Defendants.

107.   Penal Code §632 prohibits a party from secretly or surreptitiously recording such conversations without first informing all parties to the conversation that the conversation is being recorded.   If, after being so advised, another party does not wish to participate in the conversation, he or she may decline to continue the communication.  All the collection calls that have been surreptitiously recorded by Defendants were therefore "confidential communications" within the meaning of Cal. Pen. Code §632(c) in that Plaintiff and Class B members desired the telephone communications be confined to the parties thereto and not publicly disseminated based on the confidential financial information that was an inherent component of each of these calls. HFC does not advise all parties to a telephone call, at the initiation of the conversation, of its intent to record such calls.

108.   Defendants' confidential telephone communications with Plaintiff and Class B members were secretly recorded by Defendants without an advisory at the initiation of the telephone call that these confidential telephonic communications could be or were being

/ / /

-20-

1    monitored and/or recorded, and without obtaining express advance consent to record such

2    conversations or providing an advisory at the initiation of the call such calls would be recorded.

3        109.    Defendants recorded such confidential telephone conversations with Plaintiff and

4    Class B members, in violation of Cal. Pen. Code §632(a).

5        110.    Pursuant to Cal. Pen. Code §637.2(a)(1), Plaintiff and Class B members are

6    entitled to recover statutory damages in the amount of $5,000 per violation.  Plaintiffs' counsel is

7    also entitled to attorneys' fees and costs.

8        111.    Pursuant to Cal. Pen. Code §637.2(b), Plaintiff also seeks a preliminary and

9    permanent injunction to restrain Defendants from committing further violations of §632(a) of the

10   CIPA.

11                            **THIRD CAUSE OF ACTION**

12                     **(Violation of TCPA Against All Defendants)**

13       112.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint

14   as though fully stated herein.

15       113.    Defendants improperly invaded the rights of Plaintiff and Class C members, and

16   violated the TCPA.  These violations include repeatedly making calls to Class C members using

17   an automatic telephone dialing system, and by transmitting pre-recorded or artificial messages, to

18   the Plaintiff's and Class C members' cellular telephones using an automated telephone dialing

19   system without their express consent and/or to the expense of Plaintiff and Class C members, in

20   violation of 47 U.S.C. §227(b)(1)(A)(iii).

21       114.    As a result of the above violations of the TCPA, Defendants are liable to Plaintiff

22   and Class C members for declaratory judgment that Defendants' conduct violated the TCPA,

23   actual damages, statutory damages of $500 for each call, up to three times statutory damages for

24   any willful and knowing violation of 47 U.S.C. §227(b)(3), and for attorneys' fees and costs.

25   / / /

26   / / /

27   / / /

28   / / /

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No.: 10-CV-0857-WQH (RBBx)

**FOURTH CAUSE OF ACTION**

**(Violation of the Unlawful, Unfair and Fraudulent Business Acts and Practices Act
California Business and Professions Code §17200, *et seq.*)
(Against All Defendants)**

115.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116.    The acts, omissions, misrepresentations, practices and non-disclosures of Defendants as alleged herein constitute unlawful, unfair and fraudulent business acts and practices within the meaning of California Business & Professions Code §17200, *et seq*.

117.    Defendants have engaged in "unlawful" business acts and practices by violating California's Rosenthal Fair Debt Collection Practices Act, California's Invasion of Privacy Act, and the federal Telephone Consumer Protection Act, as set forth in more detail above.

118.    Defendants have also engaged in a "fraudulent" business act or practice in that the representations and omissions of material fact described above have a tendency and likelihood to deceive or mislead Plaintiff and the Class.

119.    Defendants have also engaged in an "unfair" business act or practice in that any justification for engaging in the conduct described above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to consumers, including Plaintiff and members of the Class.

120.    Defendants need only to have violated one of the provisions set forth in this cause of action to be strictly liable under this cause of action.

121.    The above-described unlawful, fraudulent or unfair business acts and practices conducted by Defendants continue to this day and present a threat to the general public in that Defendants have failed to publicly acknowledge the wrongfulness of their actions, stop the practices complained of, and provide full equitable injunctive and monetary relief as required by the statute.

122.    Plaintiff has suffered an injury in fact and a loss of money or property as a result of Defendants engaging in such acts of unfair competition.  Plaintiff incurred additional costs

1   and/or paid additional monies to Defendants as a result of such acts and practices, including, but

2   not limited to, the amounts set forth in Paragraph 87 above, and Defendants retained monies they

3   were not permitted to retain and by statute were and are required to pay to Plaintiff and others.

4        123.   Pursuant to California Business & Professions Code section 17203, Plaintiff seeks

5   an order of this Court requiring Defendants to immediately cease such acts of unfair competition

6   and enjoining Defendants from continuing to conduct business via the unlawful, fraudulent or

7   unfair business acts and practices set forth in this Complaint.  Plaintiff additionally requests an

8   order from the Court requiring that Defendants provide equitable relief so as to prevent

9   Defendants from benefitting from practices that constitute acts of unfair competition or the use or

10  employment of any monies resulting from such practices, including to the fullest extent

11  permitted by law, requiring the payment of monies as may be necessary to restore to any person

12  any money or property which may have been acquired or retained by means of such acts of

13  unfair competition and/or to ensure such funds are properly disgorged from Defendants.  Plaintiff

14  also requests that the Court impose a constructive trust over such monies, to the fullest extent

15  permitted by law.  Plaintiff also requests an award of attorneys' fees and costs pursuant to Cal.

16  Code of Civil Procedure section 1021.5 and the private Attorney General, substantial benefit and

17  common fund doctrines.

18                        **PRAYER FOR RELIEF**

19       WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as

20    follows, as applicable to each cause of action:

21       **First Cause of Action: California Fair Debt Collection Practices Act**

22       1.   An award of actual damages pursuant to Cal. Civil Code §1788.30(a);

23       2.   The maximum amount of statutory damages provided under Cal. Civil Code

24  §1788.30(b) and Cal. Civil Code §1788.17 (incorporating 15 U.S.C. §1692k);

25       3.   For an award of costs of litigation and reasonable attorneys' fees pursuant to Cal.

26  Civil Code §1788.30(c).

27  / / /

28  / / /

-23-

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No.: 10-CV-0857-WQH (RBBx)

**Second Cause of Action: California's Invasion of Privacy Act**

4.      For statutory damages in the amount of $5,000 per violation pursuant to Cal. Pen. Code §637.2(a)(1);

5.      For a preliminary and permanent injunction to restrain further violations of §631 of California's Invasion of Privacy Act, pursuant to Cal. Pen. Code §637.2(b);

6.      For the payment of reasonable attorneys' fees and costs of suit incurred herein as provided for by law under, *inter alia,* California Code of Civil Procedure §1021.5 and the private Attorney General, substantial benefit and common fund doctrines.

**Third Cause of Action: Violation of TCPA**

7.       For declaratory relief;

8.      For statutory damages of $500 per telephone call;

9.      For up to three times statutory damages;

10.     For reasonable attorneys' fees and costs.

**Fourth Cause of Action: Business and Professions Code §§17200, *et seq*.**

11.     For the equitable relief set forth more fully in this Complaint, as appropriate for this cause of action and to the fullest extent permitted by law;

12.     For a preliminary and permanent injunction and declaratory relief as set forth in this Complaint;

13.     For reasonable attorneys' fees and costs of suit as specified under, *inter alia*, California Code of Civil Procedure §1021.5 and the private Attorney General, substantial benefit and common fund doctrines.

**For All Causes of Action**

14.     For pre- and post-judgment interest at the legal rate; and

15.     For any other relief that the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TRIAL BY JURY</u>**

Plaintiff is entitled to and demands a trial by jury for all claims so triable.

DATED:  June 7, 2010                              Respectfully submitted,

ARLEO LAW FIRM, PLC

By:    S/Elizabeth J. Arleo
             ELIZABETH J. ARLEO
             elizabeth@arleolaw.com
1672 Main Street, Suite E, PMB 133
Ramona, CA 92065
Telephone: 760/789-8000
760/789-8081 (fax)

THE CONSUMER LAW GROUP

By:    S/Alan M. Mansfield
             Alan M. Mansfield (SBN 125998)
             alan@clgca.com
9466 Black Mountain Rd., Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

Attorneys for Plaintiff

-25-

# EXHIBIT B

Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:   (619) 233-7770
Facsimile:    (619) 297-1022


**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian Esq, (SBN: 249203)
ak@kazlg.com
2700 N. Main Street, Suite 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for the Plaintiff

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA AFRASIABI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>               PLAINTIFFS,<br><br>V.<br><br>HSBC BANK USA, N.A.; HSBC BANK NEVADA, N.A.,<br><br>           DEFENDANTS. | **CASE NO.: 12-CV-0685-MMA (DHB)**<br><br>**<u>CLASS ACTION</u>**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

*(left margin, vertical text)* KAZEROUNI LAW GROUP, APC — Santa Ana, California

KAZEROUNI LAW GROUP, APC
Santa Ana, California

**INTRODUCTION**

1.   NINA AFRASIABI ("Plaintiff") brings this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of HSBC BANK USA, N.A. and HSBC BANK NEVADA, N.A., and their related entities, subsidiaries and agents ("Defendants") in willfully employing and/or causing to be employed certain wire-tapping, eavesdropping, recording and listening equipment in order to record, monitor or listen to the telephone conversations of Plaintiff without the knowledge or consent of Plaintiff, in violation of California Penal Code §§ 630 *et seq*., thereby invading Plaintiff's privacy.   Plaintiff alleges as follows upon personal knowledge as to herself and his own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by his attorneys.

2.   California Penal Code § 632 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other.   Penal Code § 632 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed.   The only intent required by Penal Code § 632 is that the act of recording itself be done intentionally.   There is no requisite intent on behalf of the party doing the surreptitious recording to break California or any other law, or to invade the privacy right of any other person.   Plaintiff alleges that despite California's two-party consent rule, Defendants continue to violate Penal Code § 632 by impermissibly recording, monitoring, and/or eavesdropping upon its telephone conversations with California residents.

**JURISDICTION AND VENUE**

3.   Jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff is a resident of California and Defendants are a resident of Buffalo, NY.   As the damages

1    equal $5,000 per call, pursuant to Penal Code § 637.2(a), and Plaintiff
2    believes that thousands of telephone calls took place between Plaintiff, the
3    Class Members and Defendants in the statutory class period, the amount in
4    controversy far exceeds that of $75,000.00 seeks relief on behalf of a state-
5    wide class with Defendants being from a separate State, New York. Plaintiff
6    also seeks the greater of statutory damages of $5,000 per violation or three
7    times actual damages per violation pursuant to Penal Code § 637.2(a), which,
8    when aggregated among a proposed class number in the tens of thousands,
9    exceeds the $5,000,000 threshold for federal court jurisdiction. Therefore,
10   both diversity jurisdiction and the damages threshold under 28 U.S.C. § 1332
11   present, and this Court has jurisdiction.

4.   Venue is proper in the United States District Court for the Southern District
     of California pursuant to 18 U.S.C. § 1391(b) and 1441(a) because
     Defendants do business within the State of California and the County of San
     Diego.

## PARTIES

5.   Plaintiff is, and at all times mentioned herein was, an individual citizen and
     resident of the State of California.

6.   Plaintiff is informed and believes, and thereon alleges, that Defendants are,
     and at all times mentioned herein were, corporations whose primary
     corporate address is One HSBC Center, 27th Floor, Buffalo, NY 14203.
     Defendants have a policy and practice of recording and/or monitoring
     telephone conversations with the public, including California residents.
     Defendants' employees and agents are directed, trained and instructed to, and
     do, record, monitor, and/or eavesdrop upon telephone conversations with the
     public, including California residents.

KAZEROUNI LAW GROUP, APC
Santa Ana, California

**FACTUAL ALLEGATIONS**

7.  Defendants are, and at all times mentioned herein was, a corporation. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

8.  At all times relevant, Plaintiff was an individual residing within the State of California.

9.  On or about March 10, 2012, at approximately 8:03 a.m. Plaintiff received a telephone call on her cellular telephone from Defendants where a certain employee, officer and/or agent of Defendants by the name of Nina was calling about an alleged delinquency on a credit card. This conversation with Plaintiff was, without Plaintiff's knowledge or consent, recorded, monitored, and/or eavesdropped upon by Defendants, causing harm and damage to Plaintiff.   Only at the end of the conversation, after having talked to Defendants, when Plaintiff inquired if the call was being monitored and/or recorded did Defendants disclose that Defendants were in fact recording the call.   At no time during this call did Plaintiff give his consent for the telephone call to be monitored, recorded and/or eavesdropped upon.

10.  This call was a confidential communication and at no time during this call did Plaintiff give her consent for the telephone call to be monitored, recorded and/or eavesdropped upon.

11.  Plaintiff is informed and believes, and thereon alleges, that during the relevant time period, Defendants have had a policy and a practice of recording and/or monitoring telephone conversations with consumers. Defendants' employees and agents are directed, trained and instructed to, and

KAZEROUNI LAW GROUP, APC
Santa Ana, California

KAZEROUNI LAW GROUP, APC
Santa Ana, California

do, record, monitor, and/or eavesdrop upon telephone conversations with the public, including Plaintiff and other California residents.

12. Plaintiff is informed and believes, and thereon alleges, that during the relevant time period, Defendants have installed and/or caused to be installed certain wire-tapping, eavesdropping, and listening equipment in its employees' or agents' telephone lines. Defendants use these devices to overhear, record, and listed to each and every telephone conversation on said telephone lines.

13. Plaintiff is informed and believes, and thereon alleges, that during the relevant time period, Defendants have had all of its calls to the public, including those made to California residents, recorded, monitored, and/or eavesdropped upon without the knowledge or consent of the public, including Plaintiff and other California residents.

14. Defendants' conduct alleged herein constitutes violations of the right to privacy to the public, including Plaintiff and other California residents, and California Penal Code § 630 *et seq*.

**CLASS ACTION ALLEGATIONS**

15. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated ("The Class").

16. Plaintiff represents, and is a member of, The Class defined as follows: "All persons in California whose inbound and outbound telephone conversations were monitored, recorded, eavesdropped upon and/or wiretapped without their consent by Defendants within the four years prior to the filing of the original Complaint in this action."

17. Defendants, and their employees and agents are excluded from The Class. Plaintiff does not know the number of members in The Class, but believes the Class Members number in the tens of thousands, if not more. Thus, this

KAZEROUNI LAW GROUP, APC
Santa Ana, California

matter should be certified as a Class action to assist in the expeditious litigation of this matter.

18.   This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of The Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand The Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

19.   The joinder of The Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class can be identified through Defendants' records.

20.   There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to The Class predominate over questions which may affect individual Class members, including the following:

   a.   Whether Defendants have a policy of recording, wiretapping, eavesdropping upon and/or monitoring incoming and/or outgoing calls;

   b.   Whether Defendants disclose to callers and/or obtains their consent that their incoming and/or outgoing telephone conversations were being recorded, wiretapped, eavesdropped upon and/or monitored;

   c.   Whether Defendants' policy of recording, wiretapping, eavesdropping upon and/or monitoring incoming and/or outgoing calls constituted a violation of California Penal Code §§ 631(a), 632(a) and/or 637;

   d.   Whether Defendants' policy of recording, wiretapping, eavesdropping upon, and/or monitoring incoming and/or outgoing calls constitutes a violation of California Business and Professions Code §§ 17200 *et seq*.;

e.  Whether Defendants' policy of recording, wiretapping, eavesdropping upon, and/or monitoring incoming and/or outgoing calls constitutes an invasion of privacy;

f.  Whether Plaintiff and The Class were damaged thereby, and the extent of damages for such violations; and

g.  Whether Defendants should be enjoined from engaging in such conduct in the future.

21.  Plaintiff is asserting claims that are typical of The Class because every other member of The Class, like Plaintiff, was exposed to virtually identical conduct and are entitled to the grater of statutory damages of $5,000 per violation or three times actual damages per violation pursuant to Penal Code § 637.2(a).

22.  Plaintiff will fairly and adequately represent and protect the interests of The Class in that Plaintiff has no interests antagonistic to any member of The Class.  Plaintiff has retained counsel experienced in handling class action claims to further ensure such protection.

23.  Plaintiff and the members of The Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, The Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

24.  A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendants to comply with federal and California law.  The interest of The Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual

KAZEROUNI LAW GROUP, APC
Santa Ana, California

1  action for violation of privacy are minimal.  Management of these claims is

2  likely to present significantly fewer difficulties than those presented in many

3  class claims.

4  25.  Defendants have acted on grounds generally applicable to The Class, thereby

5  making appropriate final injunctive relief and corresponding declaratory

6  relief with respect to The Class as a whole.

**FIRST CAUSE OF ACTION**
**INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 630 *ET SEQ.***

9  26.  Plaintiff incorporates by reference all of the above paragraphs of this

10  Complaint as though fully stated herein.

11  27.  Californians have a constitutional right to privacy.  Moreover, the California

12  Supreme Court has definitively linked the constitutionally protected right to

13  privacy within the purpose, intent and specific protections of the Privacy Act,

14  including specifically, Penal Code § 632.  "In addition, California's explicit

15  constitutional privacy provision (Cal. Const., 1 § 1) was enacted in part

16  specifically to protect California from overly intrusive business practices that

17  were seen to pose a significant and increasing threat to personal privacy.

18  (Citations omitted).   Thus, we believe that California must be viewed as

19  having a strong and continuing interest in the full and vigorous application of

20  the provisions of section 632 prohibiting the recording of telephone

21  conversations without the knowledge or consent of all parties to the

22  conversation. *Kearney v. Salmon Smith Barney, Inc.,* (2006) 39 Cal. 4th 95,

23  125.

24  28.  California Penal Code § 632 prohibits one party to a telephone call from

25  intentionally recording the conversation without the knowledge or consent of

26  the other party.  Penal Code § 632 is violated the moment the recording is

27  made without the consent of all parties thereto, regardless of whether it is

28  subsequently disclosed that the telephone call was recorded.  The only intent

KAZEROUNI LAW GROUP, APC
Santa Ana, California

KAZEROUNI LAW GROUP, APC
Santa Ana, California

required by Penal Code § 632 is that the act of recording itself be done intentionally.   There is no requisite intent on behalf of the party doing the surreptitious recording to break California law or any other law, or to invade the privacy right of any other person.

29.   Plaintiff is informed and believes and thereupon alleges that Defendants employed and/or caused to be employed certain wire-tapping, eavesdropping, recording, and listening equipment on the telephone lines of all employees, officers, directors, and managers of Defendants.

30.   Plaintiff is informed and believes and thereupon alleges that all these devises were maintained and utilized to overhear, record, and listen to each and every incoming and outgoing telephone conversation over said telephone lines.

31.   Said wire-tapping, listening, recording, and eavesdropping equipment was used to record, monitor, or listen to the telephone conversations of Plaintiff and the members of The Class, all in violation of California Penal Code §§ 631(a) and/or 632.6(a).

32.   At no time that these telephone conversations were taking place between Defendants or any employee, agent, manager, officer, or director of Defendants, and any other person, did Defendants inform Plaintiff or any other member of The Class that the interceptions, eavesdropping, wire-tapping, listening, and recording of their telephone conversations were taking place and at no time did Plaintiff or any other member of The Class consent to this activity.

33.   Defendants, knowing that it was unlawful and a violation of Plaintiff and the members of The Class' right to privacy and a violation of California Penal Code § 630, *et seq.*, did intrude on Plaintiff and the members of The Class' privacy by knowingly and/or negligently and/or intentionally engaging in the aforementioned intercepting, eavesdropping, wire-tapping, listening, and recording activities relative to the telephone conversations between Plaintiff

1   The Class members, on the one hand, and Defendants on the other hand, as

2   alleged herein above.

34.   Based on the foregoing, Plaintiff and the members of The Class are entitled

to, and below herein do pray for, their statutory remedies and damages,

including but not limited to, those set forth in California Penal Code § 637.2.

35.   Because this case is brought for the purposes of enforcing important rights

affecting the public interest, Plaintiff and The Class seek recovery of their

attorney's fees pursuant to the private attorney general doctrine codified in

Code of Civil Procedure § 1021.5, or any other statutory basis.

**SECOND CAUSE OF ACTION**
**INVASION OF PRIVACY: COMMON LAW**

36.   Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

37.   Defendants invaded Plaintiff the members of The Class' right to privacy by

intentionally allowing the unauthorized eavesdropping, wiretapping,

recording, and listening of the telephone conversation with Plaintiff and the

members of The Class and negligently maintaining the confidentiality of the

information of Plaintiff and the members of The Class, as set for above.

38.   The intrusion through the unauthorized eavesdropping, wiretapping,

recording, and listening of the telephone conversations with Plaintiff and the

members of The Class and the negligently maintaining of the confidentiality

of the information of Plaintiff and The Class, was offensive and

objectionable to Plaintiff, the Class, and to a reasonable person of ordinary

sensibilities.

39.   The intrusion was into a place or thing which was private and which is

entitled to be private, in that Plaintiff and The Class' personal conversations

and information provided to Defendants were made privately, were intended

KAZEROUNI LAW GROUP, APC
Santa Ana, California

1   not to be recorded, and were intended to be kept confidential and protected
2   from unauthorized disclosure.

3   40.   As a proximate result of Defendants' above acts, Plaintiff and The Class'
4         personal conversations and information were intentionally wire-tapped,
5         eavesdropped, recorded, and listened to, and then distributed and used by
6         persons without prior written authorization, and Plaintiff and The Class
7         suffered general damages in an amount to be determined at trial according to
8         proof.

9   41.   Defendants are guilty of oppression, fraud, or malice by permitting and
10        intentionally wire-tapping, eavesdropping, recording, and listening to
11        Plaintiff and The Class' personal conversations and information with a
12        willful and conscious disregard of Plaintiff and The Class' right to privacy.

13  42.   Unless and until enjoined and restrained by order of this Court, Defendants'
14        wrongful conduct will continue to cause Plaintiff and The Class great and
15        irreparable injury in that the personal information maintained by Defendants
16        can be distributed and used by unauthorized persons.  Plaintiff and members
17        of The Class have no adequate remedy at law for the injuries in that a
18        judgment for monetary sanctions will not end the invasion of privacy for
19        Plaintiff and The Class.

20                              **THIRD CAUSE OF ACTION**

21                                    **NEGLIGENCE**

22  43.   Plaintiff incorporates by reference all of the above paragraphs of this
23        Complaint as though fully stated herein.

24  44.   Defendants, as aforesaid herein, have various statutory and common law
25        duties not to engage in the aforementioned wire-tapping, eavesdropping,
26        recording, and listening conduct such that Plaintiff and The Class' rights to
27        privacy were invaded and breached.

28

KAZEROUNI LAW GROUP, APC
Santa Ana, California

KAZEROUNI LAW GROUP, APC
Santa Ana, California

45. Defendants negligently and recklessly engage in the aforementioned eavesdropping, wiretapping, recording, and listening conduct of Plaintiff and The Class.

46. These activities of Defendants as aforesaid in this cause of action and in this Complaint, legally caused actual, statutorily-imposed and/or demonstrable damages to Plaintiff and The Class.

47. As a result of Defendants' activities as aforesaid in this cause of action and Complaint, Plaintiff and The Class suffered damage as a result of the conduct of Defendants.  Plaintiff and The Class are entitled to their damages in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION
## UNLAWFUL, FRAUDULENT AND UNFAIR BUSINESS ACTS AND PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*

48. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. As a result of Defendants' violations of California Penal Code §§ 631(a) and/or 632.6(a), as set forth above, and Defendants' violation of California Business and Professions Code § 17200, as set forth below, Plaintiff and The Class have suffered an injury in fact by, among other things, having their personal information recorded without their prior permission or consent, as required by California Penal Code § 630 *et seq.*  Additionally, Plaintiff and The Class have lost property in that Plaintiff and The Class suffered and are each entitled to the greater of statutory damages of $5,000 per violation pursuant to Penal Code § 637.2(a), or three times actual damages per violation pursuant to Penal Code § 637.2(a).

KAZEROUNI LAW GROUP, APC
Santa Ana, California

50. Defendants' conduct in violation of California Penal Code §§ 631(a) and/or 632.6(a), as set forth above, violates California Business and Professions Code § 17200 in the following respects:

a. Defendants' conduct of overhearing, recording, and listening to each and every incoming and outgoing telephone conversation with Plaintiff and The Class without their prior consent, as set forth above, constitutes an unlawful business practice because Defendants' conduct violates California Penal Code §§ 631(a) and/or 632.6(a); and

b. Defendants' conduct of overhearing, recording, and listening to each and every incoming and outgoing telephone conversation with Plaintiff and The Class without their prior consent, as set forth above, constitutes an unfair business practice because Defendants' practice is unethical, unscrupulous, and substantially injurious to consumers. The harm to Plaintiff and the members of The Class outweighs the utility, if any, of Defendants' practices.

51. Defendants' unlawful and unfair business practices, as described above, present a continuing threat to Plaintiff and the Class since Defendants continue to overhear, record, and listen to each and every incoming and outgoing telephone conversation with California residents, including Plaintiff and The Class without their prior consent. Plaintiff and The Class have no other adequate remedy of law in that absent equitable relief from the Court, Defendants are likely to continue to injure California residents, and thus engendering a multiplicity of judicial proceedings.

52. Pursuant to Business & Professions Code § 17203, Plaintiff and The Class seek an order of this Court for equitable and/or injunctive relief in the form of an order instructing Defendants to prohibit the overhearing, recording, and listening to of each and every incoming and outgoing telephone conversation with California residents, including Plaintiff and The Class without their

prior consent and to maintain the confidentiality of the information of Plaintiff and The Class.  Plaintiff and The Class also seek the recovery of attorney's fees and costs in prosecuting this action against Defendants under Code of Civil Procedure § 1021.5 and other applicable law.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and The Class members the following relief against Defendants, and each of them:

1.    That this action be certified as a class action on behalf of The Class and Plaintiff be appointed as the representative of The Class;

2.    For the greater of statutory damages of $5,000 per violation or three times actual damage per violation pursuant to Penal Code § 637.2(a) for Plaintiff and each member of The Class;

3.    Injunctive relief in the form of an order requiring Defendants to disgorge all ill-gotten gains and awarding Plaintiff and The Class full restitution of all monies wrongfully acquired by Defendants by means of such unfair and unlawful conduct;

4.    That the Court preliminarily and permanently enjoin Defendants from overhearing, recording, and listening to each and every oncoming and outgoing telephone conversation with California resident, including Plaintiff and The Class, without their prior consent, as required by California Penal Code § 630, *et seq.*, and to maintain the confidentiality of the information of Plaintiff and The Class;

5.    For general damages according to proof;

6.    For special damages according to proof;

7.    For exemplary or punitive damages;

8.    For costs of suit;

9.    For prejudgment interest at the legal rate; and

10.   For such further relief as this Court deems necessary, just, and proper.

KAZEROUNI LAW GROUP, APC
Santa Ana, California

**TRIAL BY JURY**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Date: April 20, 2012                               **Kazerouni Law Group, APC**


By:  _/s Abbas Kazerounian___
     Abbas Kazerounian
     Attorneys for Plaintiff


**HYDE & SWIGART**

By:  _/s Joshua B. Swigart_
     Joshua B. Swigart

# EXHIBIT C

1 | Edward S. Zusman (CASB No. 154366)
2 | Kevin K. Eng (CASB No. 209036)
  | MARKUN ZUSMAN & COMPTON, LLP
3 | 465 California Street, Suite 500
  | San Francisco, CA 94104
4 | Telephone: (415) 438-4515
  |  (415) 434-4505 (fax)
5 | Email: ezusman@mzclaw.com
  | Email: keng@mzclaw.com
6 | ARLEO LAW FIRM, PLC
7 | ELIZABETH J. ARLEO (CASB No. 201730)
  | 1672 Main Street, Suite E, PMB 133
8 | Ramona, CA 92065
  | Telephone: 760/789-8000
9 | 760/789-8081 (fax)
  | Email: elizabeth@arleolaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| TERRY J. FANNING and TATIANA JABBAR, each individually and on behalf of all others similarly situated, | CASE NO.: SACV12 885 JVS(RNBx) |
|---|---|
| Plaintiffs, | COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S INVASION OF PRIVACY ACT, CAL. PENAL CODE §630, *ET SEQ.* |
| vs. | |
| HSBC CARD SERVICES INC., and HSBC TECHNOLOGY & SERVICES (USA) INC., | CLASS ACTION |
| Defendants. | DEMAND FOR JURY TRIAL |

21

22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

-1-

CLASS ACTION COMPLAINT

Plaintiffs Terry J. Fanning and Tatiana Jabbar ("Plaintiffs") allege as follows against defendant HSBC Card Services Inc. and HSBC Technology & Services (USA) Inc. (collectively, "Defendants"):

## GENERAL ALLEGATIONS

1. This action arises out of Defendants' violations of California's Invasion of Privacy Act, CAL. PENAL CODE § 630, *et seq.* ("CIPA"), which prohibits the recording of confidential communications without the consent of all parties to the conversation.

2. Defendants oversee an extensive call center system for the millions of consumer credit transactions they service on behalf of various entities including HSBC Bank Nevada, N.A. and Household Finance Corporation of California. Household Finance Corporation of California is a lending subsidiary of HSBC Finance Corporation which operates non-credit card consumer and mortgage lending businesses.  HSBC Bank Nevada, N.A., also a subsidiary of HSBC Finance Corporation, is a national bank that issues credit cards.  During times relevant to this complaint, Defendant HSBC Card Services, Inc. conducted debt collection activity against California customers who held credit cards with HSBC Bank Nevada, N.A. and had consumer and mortgage loans through Household Finance Corporation of California.

3. The call center system includes approximately 28 domestic and international call centers including one call center in Pomona, California. Millions of calls emanate from each of these centers every month.  Many of these calls are made to California residents.

4. During times relevant to the CIPA claims made herein, Defendant HSBC Technology & Services (USA) Inc. performed all back-end services for Defendant HSBC Card Services, Inc., including the recording of telephone calls initiated by HSBC Card Services, Inc. with California residents. As of May 2010, HSBC Technology & Services (USA) Inc. had 53 recorders in North America for

-2-

1  calls made by Defendant HSBC Card Services, Inc. regarding card and retail

2  services businesses.    At each of HSBC Card Services, Inc.'s call centers,

3  Defendant HSBC Technology & Services (USA) Inc. uses databases and servers to

4  store and retrieve the recordings.

5        5.    CIPA prohibits the recording of confidential communications without

6  first obtaining the consent of all parties to the conversation.  Plaintiffs reasonably

7  believed that the conversations would be treated confidentially.  In violation of

8  CIPA, Defendants recorded Plaintiffs' and class members' telephone calls without

9  their consent.

10       6.    Defendants have engaged in a pattern and practice of recording a

11  substantial percentage of the telephonic communications with individuals located

12  in California.

13       7.    Defendants intentionally, and without the consent of all parties, by

14  means of an electronic recording device, recorded confidential telephonic

15  communications in outgoing calls initiated by Defendants in connection with

16  attempts to collect on credit cards and non-credit card consumer and mortgage

17  loans with Plaintiffs and members of the Class which they seek to represent.

18                       **JURISDICTION**

19       8.    This Court has jurisdiction over this class action under the Class

20  Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), which provides for the

21  original jurisdiction of the federal courts of any class action in which any member

22  of the Class is a citizen of a State different from the defendant, and in which the

23  matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of

24  interest and costs.  The total claims of individual class members in this action are

25  well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as

26  required by 28 U.S.C. § 1332(d)(2), (5).  Furthermore, the total number of

27  members of the proposed Class is greater than 100, pursuant to 28 U.S.C. §

28  1332(d)(5)(B).  Each of the Plaintiffs is a citizen of California.  Therefore,

CLASS ACTION COMPLAINT

1  diversity of citizenship exists under CAFA as defined by 28 U.S.C. §
2  1332(d)(2)(A).

3  **VENUE**

4      9.    Venue is proper in this district under 28 U.S.C. § 1391(b) because
5  Plaintiffs reside in this district and a substantial part of the events giving rise to
6  Plaintfs' claims occurred in this district.

7  **PARTIES**

8      10.    Plaintiffs Terry J. Fanning and Tatiana Jabbar are residents of Los
9  Angeles and Orange County, California, whose confidential telephone
10  communications were unlawfully recorded by Defendants.

11      11.    Defendant HSBC Card Services, Inc. is a Delaware corporation with
12  principal place of business in Illinois.

13      12.    Defendant HSBC Technology & Sevices (USA) Inc. is a Delaware
14  corporation with principal place of business in Illinois.

15      13.    At all times relevant hereto and since at least 2006, Defendants have
16  recorded confidential telephone communications with individuals located within
17  California.

18      14.    Defendants did not obtain consent to record the credit card calls prior
19  to the time they recorded the calls.  In June 2011, the district court in *Debra Ann*
20  *Bailey v. Household Finance Corp. of California,* in the Southern District of
21  California, held that the HSBC Bank Nevada credit card agreement failed to
22  inform customers that calls by HSBC Card Services would be recorded.

23      15.    For calls related to the mortgage lending business, Defendants are
24  required, as a matter of policy and practice, to give a disclosure before speaking to
25  a customer that the call is being recorded.   Defendants have previously admitted
26  they did not provide any verbal advisory about the recording during 0.2% of a
27  sample set of recordings.

28  ///

-4-

16.   Defendants also had a practice of recording an average of 20% of all of the telephone calls (at times up to 100% of the calls in certain businesses) using a centralized call recording hardware and software called "Witness."

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL TELEPHONIC COMMUNICATIONS WITH THE REPRESENTATIVE PLAINTIFFS

17.   In or about March 2006, Plaintiff Terry J. Fanning entered into an unsecured line of credit agreement with Household Finance Corporation of California. Later in 2006, Plaintiff Fanning entered into a credit card agreement through HSBC Bank Nevada. On multiple occasions, during 2010 and 2011, Defendants called Plaintiff Fanning and engaged Plaintiff Fanning in confidential telephonic communications. Upon information and belief, Defendants recorded conversations with Plaintiff Fanning without his consent.

18.   In or about April 17, 2006, Plaintiff Tatiana Jabbar entered into a home equity line of credit with Household Finance Corporation, Household Finance Corporation of California and/or HSBC Bank USA, N.A. On multiple occasions, during 2007 through 2010, Defendants called Plaintiff Jabbar and engaged Plaintiff Jabbar in confidential telephonic communications. Upon information and belief, Defendants recorded conversations with Plaintiff Jabbar without her consent.

## POLICIES AND PRACTICES COMPLAINED OF

19.   Defendants' policies and practices are to record confidential telephonic communications with California individuals, without advising them at the outset of each telephone call that it is being recorded, in violation of California Penal Code section 630, *et seq.*

## CLASS ACTION ALLEGATIONS

20.   Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs in this case were members of the

-5-

---

*Bailey* putative class and had no notice of the action or its dismissal. The class period is the period beginning March 23, 2009, to the present. The CIPA claims of Plaintiffs and members of the class were covered by the *Bailey* litigation. *Bailey* was dismissed only as to the named Plaintiff's claims, pursuant to Rules 41(a)(1) and 41(a)(2) of the Federal Rules of Civil Procedure, but without prejudice as to putative class claims. Plaintiffs and the members of the Class are entitled to rely on the same class period alleged in *Bailey*.

21. The class that Plaintiffs seek to represent (the "Class") is defined as:

All individuals located within California whose confidential telephonic conversations with Defendants were recorded without their consent.

Plaintiffs further seek to divide the Class into the following Subclasses:

Subclass A:

All individuals located within California whose confidential telephonic conversations with Defendants were recorded by HSBC Technology & Services (USA) Inc. without their consent, and whose recordings were reviewed by Defendants and identified as not having received a verbal warning that the conversations could be recorded.

Subclass B:

All individuals located within California who engaged in confidential telephonic conversations with Defendants' representatives, located in Defendants' Pomona, California call center, and whose confidential telephonic conversations were recorded without their consent.

22. Excluded from the class are governmental entities, Defendants, their subsidiaries, employees, officers, and directors, and members of their immediate families. Also excluded are any judges, justices, or judicial officers presiding over this matter, counsel for any of the parties in this action, and all members of their immediate families.

///

-6-

23. The identities of the class members are ascertainable from Defendants' business records.

24. This action has been brought and may properly be maintained as a class action because:

    a. ***Numerosity:*** The Class is so numerous that joinder of all members is impractical.

    b. ***Common Questions Predominate:*** There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual Class members. The principal issue is whether Defendant violated California's Invasion of Privacy Act (CAL. PENAL CODE § 630 *et seq.*) by recording confidential telephonic communications with class members without first obtaining the consumer's consent at the initiation of the call;

    c. ***Typicality:*** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and members of the Class have similar claims and remedies arising out of Defendant's common course of conduct complained of herein.

    d. ***Adequacy:*** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs are committed to vigorously litigating this matter, and have retained counsel experienced in handling class claims and claims involving CIPA. Neither Plaintiffs nor Plaintiffs' counsel have any irreconcilable conflicting interests that might cause them not to vigorously pursue this claim.

    e. ***Superiority and Manageability:*** A class action is superior to other available means for the fair and efficient adjudication of this controversy on a group-wide basis since individual joinder of all

-7-

members would be impracticable.   Class action treatment is manageable as it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.   Furthermore, since individual members' claims for damages are modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the class to redress the wrongs done to them.   Important public interests will be served by addressing the matter as a class action and substantial economies to the litigants and to the judicial system will be realized, because Defendant has acted on grounds that generally apply to the class so that injunctive or declaratory relief is appropriate to the class as a whole.   The potential for varying, inconsistent or contradictory adjudications will be avoided if this matter is litigated on a class-wide basis.

25.   Notice to the proposed class may be provided by direct mail, by first-class mail, e-mail, or other reasonable means, or alternatively by publication.

## CAUSE OF ACTION
### (For Statutory Damages and Injunctive Relief For Violations of CAL. PENAL CODE §§ 632, 637.2(a)-(b))

26.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

27.   At all times relevant herein, Defendants routinely communicated by telephone with Plaintiffs and other class members.

28.   At all times relevant herein, Defendants made use of a software system that enables it to secretly record confidential telephone conversations between Defendants and class members.

-8-

29.   In each of their conversations with Defendants, the Plaintiffs and Class Members discussed their personal financial circumstances and affairs, including Defendants' collection efforts on each Class Member's accounts.  It was reasonable for the Plaintiffs and Class Members to expect that the conversations would be confined to the parties to the conversation, and that their conversations were not being overheard or recorded.   Each of the conversations between Defendants and the class members was a "confidential communication" within the meaning of California Penal Code section 632(c).

30.   Penal Code section 632 prohibits a party from recording such conversations without first informing all parties to the conversation that the conversation is being recorded.   Defendants' confidential telephone communications with Plaintiffs and class members were secretly and surreptitiously recorded by Defendants without obtaining express advance consent to record such conversations.

31.   Defendants' practice of recording telephone conversations with Plaintiffs and class members violated California Penal Code section 632(a).

32.   Pursuant to California Penal Code section 637.2(a)(1), Plaintiffs and class members are entitled to recover statutory damages in the amount of $5,000 per violation.  Plaintiffs' counsel is also entitled to attorneys' fees and costs.

33.   Pursuant to California Penal Code section 637.2(b), Plaintiffs also seek a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendant as follows:

1.   For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code section 637.2(a)(1);

///

CLASS ACTION COMPLAINT

2.      For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code section 637.2(b);

3.      For the payment of reasonable attorneys' fees and costs of suit incurred herein;

4.      For pre- and post-judgment interest at the legal rate; and

5.      For any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs are entitled to and demand a trial by jury for all claims so triable.

Dated: June 4, 2012                    MARKUN ZUSMAN & COMPTON, LLP


Edward S. Zusman
Kevin K. Eng
465 California Street, Suite 500
San Francisco, CA 94104
Tele: (415) 438-4515
Fax: (415) 434-4505

Elizabeth J. Arleo
ARLEO LAW FIRM, PLC
1672 Main Street, Suite E, PMB 133
Ramona, CA 92065
Tel: (760) 789-8000
Fax: (760) 789-8081

Attorneys for Plaintiffs

-10-

CLASS ACTION COMPLAINT

# EXHIBIT D

1  Joshua B. Swigart, Esq. (SBN: 225557)
   josh@westcoastlitigation.com
2  **Hyde & Swigart**
   2221 Camino Del Rio South, Suite 101
3  San Diego, CA 92108-3551
   Telephone: (619) 233-7770
4  Facsimile: (619) 297-1022
5

6  **KAZEROUNI LAW GROUP, APC**
   Abbas Kazerounian, Esq. (SBN: 249203)
7  ak@kazlg.com
   245 Fischer Avenue, Unit D1
8  Costa Mesa, CA 92626
   Telephone: (800) 400-6808
9  Facsimile: (800) 520-5523
10

11 *Attorneys for Plaintiffs*
12
13         **UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF CALIFORNIA**
14

15 GAIL MEDEIROS, TRACY T.          **Case No: 3:14-cv-01786-JLS-MDD**
16 BOMBERGER, PETER
   MORRISSEY, and JULIE            **First Amended Class Action**
17 PULATIE, individually and on     **Complaint For Damages for**
   behalf of all others similarly   **Violations of California's Invasion**
18 situated,                        **of Privacy Act, Cal. Penal Code §**
                                    **630, et seq.**
19
20               Plaintiffs,        **Jury Trial Demanded**
21 v.
22 HSBC CARD SERVICES INC.
   AND HSBC TECHNOLOGY &
23 SERVICES (USA) INC.
24               Defendants.
25
26
27
28

*vertical left margin:* **HYDE & SWIGART** San Diego, California

**INTRODUCTION**

1. GAIL MEDEIROS (referred to individually as "Medeiros" ), TRACY T. BOMBERGER ("Bomberger"), PETER MORRISSEY ("Morrissey") and JULIE PULATIE ("Pulatie" or referred to collectively as "Plaintiffs"); bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of HSBC CARD SERVICES INC. AND HSBC TECHNOLOGY & SERVICES (USA) INC., (hereinafter referred to as "HSBC") and their related entities, subsidiaries and agents in knowingly, and/or willfully employing and/or causing to be employed certain recording equipment in order to record to the telephone conversations of Plaintiff without the knowledge or consent of Plaintiff, in violation of California Penal Code §§ 630 *et seq*., thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. California Penal Code § 632.7 prohibits one party to a telephone call from intentionally recording the conversation without the knowledge or consent of the other while the person being recorded is on a cellular phone.  Penal Code § 632.7 is violated the moment the recording is made without the consent of all parties thereto, regardless of whether it is subsequently disclosed. The only intent required by Penal Code § 632 is that the act of recording itself be done intentionally. There is no requirement under California Penal Code § 632.7 that the communication be confidential.   Plaintiff alleges that Defendants continues to violate Penal Code § 632.7 by impermissibly recording its telephone conversations with California residents while said residents are on cellular telephones.

//

//

HYDE & SWIGART
San Diego, California

## JURISDICTION AND VENUE

3.    Jurisdiction is proper under 28 U.S.C. § 1332(d) ("CAFA"), which provides for original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from the defendant, and in which the matter in controversy exceeds, in the aggregate, the sum of $5 million, exclusive of interest and costs.  The total claims of individual class members in this action are well in excess of $5 million, as each illegally recorded telephone call would provide statutory damages in the amount of $5,000.  Further, on information and belief, Defendants have made thousands of telephone calls illegally recording Plaintiff and the putative class, without consent or knowledge, thereby satisfying the requirements under 28 U.S.C. § 1332(d)(2), (5).    Based on the belief that thousands of individuals in California would be included in any certified class, the numerosity requirement, exceeding forty members, is satisfied, pursuant to 28 U.S.C. § 1332(d)(5)(B).  Plaintiff is a citizen of California and Defendants are citizens of Virginia and Illinois.    Therefore, diversity of citizenship exists under CAFA as defined by 28 U.S.C. § 1332(d)(2)(A).

## VENUE

4.    Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b)(2) because the Plaintiff Medeiros and Morrissey reside in this judicial district of California, a substantial part of the events giving rise to Plaintiffs' causes of action against Defendants occurred within the Southern District of California (Plaintiffs' telephone calls were illegally recorded while Plaintiffs were in this judicial district) and Defendants conduct business in the County of San Diego.

//

//

//

HYDE & SWIGART
San Diego, California

## PARTIES

5.    Plaintiff Medeiros is, and at all times mentioned herein was, an individual citizen and resident of Oceanside, in the County of San Diego, State of California.

6.    Plaintiff Bomberger is, and at all times mentioned herein was, an individual citizen and resident of San Bernadino, in the County of San Bernadino, State of California.

7.    Plaintiff Morrissey is, and at all times mentioned herein was, an individual citizen and resident of San Diego, in the County of San Diego, State of California.

8.    Plaintiff Pulatie is, and at all times mentioned herein was, an individual citizen and resident of Menifee, in the County of Riverside, State of California.

9.    Plaintiff is informed and believes, and thereon alleges, that HSBC CARD SERVICES INC. is, and at all times mentioned herein was, a corporation whose primary corporate address is located in Mettawa, Illinois.  HSBC CARD SERVICES INC., is, and at all times mentioned herein was, a corporation and a "person," as defined by California Penal Code § 632(b).  Defendant HSBC CARD SERVICES INC. has a policy and practice of recording telephone conversations with the public, including California residents.  Defendant HSBC CARD SERVICES INC.'s employees and agents are directed, trained and instructed to, and do, record, the telephone conversations with the public, including California residents.

10.    Plaintiff is informed and believes, and thereon alleges, that HSBC TECHNOLOGY & SERVICES (USA) INC., is, and at all times mentioned herein was, a corporation whose primary corporate address is located in Mettawa, Illinois.   HSBC TECHNOLOGY & SERVICES (USA) INC., is, and at all times mentioned herein was, a limited liability company and a

"person," as defined by California Penal Code § 632(b). Defendant HSBC TECHNOLOGY & SERVICES (USA) INC., has a policy and practice of recording telephone conversations with the public, including California residents. Defendant HSBC TECHNOLOGY & SERVICES (USA) INC.'s employees and agents are directed, trained and instructed to, and do, record, the telephone conversations with the public, including California residents.

11.   Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant HSBC placed calls to residents of the State of California, for the purpose of debt collection and therefore conducted business in the State of California.

**FACTUAL ALLEGATIONS AS IT RELATES TO PLAINTIFF GAIL MEDEIROS**

12.   During the entire calendar year of 2009, Plaintiff Medeiros had numerous telephone calls with HSBC and its agents on her landline and her cell phone.

13.   Plaintiff Medeiros had a credit card account for several years with Defendant and eventually allegedly defaulted on the account in October 2009. Prior to allegedly defaulting and as a result of the alleged default, Plaintiff Medeiros received numerous calls from Defendants.  Plaintiff received calls on her cell phone as well as calls at her place of employment by Defendants.

14.   During the months of September through December 2009, Plaintiff Meideros had numerous telephone communications with certain employees, officers and/or agents of Defendants.

15.   Specifically, on or about September 2009, Defendant HSBC attempted to contact Plaintiff Meideros to collect on Plaintiff Meideros' credit card account with Defendant HSBC   Plaintiff Meideros spoke with Defendant HSBC for a period of time, including discussions of Plaintiff's personal information which included stating her social security number.   Defendant

HYDE & SWIGART
San Diego, California

HYDE & SWIGART
San Diego, California

1    HSBC never informed Plaintiff that the conversation was being recorded. All
2    such conversations were confidential in nature.
3
4    **FACTUAL ALLEGATIONS AS IT RELATES TO ALL PLAINTIFF TRACY BOMBERGER**
5    16.    During the entire calendar years of 2008 and 2009, Plaintiff Bomberger had
6           numerous telephone calls with HSBC and its agents.
7    17.    Plaintiff Bomberger had a credit card account for several years with
8           Defendant and initially defaulted on the account in January 2009. Prior to
9           defaulting and as a result of the default, Plaintiff Bomberger received
10          numerous calls from Defendants.
11   18.    From January 2009 until July of 2009, Plaintiff had numerous telephone
12          communications with certain employees, officers and/or agents of
13          Defendants on her cell phone.
14   19.    Several times during this time period, Defendant HSBC attempted to contact
15          Plaintiff Bomberger to collect on Plaintiff Bomberger's credit card account
16          with Defendant HSBC  Plaintiff Bomberger spoke with Defendant  HSBC for
17          a period of time, including discussions of Plaintiff's personal information
18          which included stating his social security number.   Defendant HSBC never
19          informed Plaintiff Bomberger that the conversation was being recorded.  All
20          such conversations were confidential in nature.
21
22   **FACTUAL ALLEGATIONS AS IT RELATES TO ALL PLAINTIFF PETER MORRISSEY**
23   20.    Dating back to 2009, Plaintiff Morrissey had numerous telephone calls with
24          HSBC and its agents.
25   21.    Plaintiff Morrissey has had several credit card accounts with HSBC and on
26          several occasions Plaintiff Morrissey has called HSBC to discuss late fees,
27          clarify charges, and make payments by phone.
28

22. Plaintiff had numerous telephone communications with certain employees, officers and/or agents of Defendants on his cell phone.

23. Several times during this time period, Defendant HSBC spoke to Plaintiff Morrissey for a period of time, including discussions of Plaintiff's personal information which included stating his social security number.   Defendant HSBC never informed Plaintiff Morrissey that the conversation was being recorded.  All such conversations were confidential in nature.

**FACTUAL ALLEGATIONS AS IT RELATES TO ALL PLAINTIFF JULIE PULATIE**

24. During the entire calendar years of 2008 and 2009, Plaintiff Pulatie had numerous telephone calls with HSBC and its agents.

25. Plaintiff Pulatie had a credit card account for several years with Defendant and initially defaulted on the account in November 2009. Prior to defaulting and as a result of the default, Plaintiff Pulatie received numerous calls from Defendants.

26. From January 2009 until November of 2009, Plaintiff had numerous telephone communications with certain employees, officers and/or agents of Defendants on her cell phone.

27. Several times during this time period, Defendant HSBC attempted to contact Plaintiff Pulatie to collect on Plaintiff Pulatie's credit card account with Defendant HSBC  Plaintiff Pulatie spoke with Defendant  HSBC for a period of time, including discussions of Plaintiff's personal information which included stating her social security number.   Defendant HSBC never informed Plaintiff Pulatie that the conversation was being recorded.  All such conversations were confidential in nature.

HYDE & SWIGART
San Diego, California

**FACTUAL ALLEGATIONS AS IT RELATES TO ALL PLAINTIFFS**

28. At all times relevant Defendant HSBC placed calls to California residents for the purpose of debt collection while knowingly, and/or willfully employing and/or causing to be employed certain recording equipment in order to record to the telephone conversations of Plaintiff without the knowledge or consent of Plaintiff, and thus conducted business in the State of California including this judicial district.

29. Plaintiffs had a reasonable expectation that none of Plaintiffs' telephone conversations with Defendant HSBC would be recorded due to the private subject matter being discussed.

30. Plaintiffs were shocked to discover that said communications may have been recorded by Defendant HSBC without Plaintiffs' knowledge or consent.

31. Plaintiffs found Defendant HSBC clandestine recording to be highly offensive.

32. The conversation with Plaintiffs on Plaintiffs' cellular telephone, were recorded by Defendant HSBC, without Plaintiffs' knowledge or consent, causing harm and damage to Plaintiffs. Plaintiffs were never informed that Plaintiffs' telephone calls were being recorded.  At no time during these calls did Plaintiffs give consent for the telephone calls to be recorded.

33. Plaintiffs are informed and believe, and thereon allege, that during the relevant time period, Defendant HSBC had a policy and a practice of recording telephone conversations with consumers.   Defendant HSBC's employees and agents are directed, trained and instructed to, and do, record telephone conversations with the public, including Plaintiffs and other California residents.   Additionally, Defendant HSBC did not disclose to consumers that the calls are being recorded.

34. Plaintiffs are informed and believe, and thereon allege that from the January 2009 to the present, Defendant HSBC have installed and/or caused to be

HYDE & SWIGART
San Diego, California

1  installed certain recording equipment in its employees' or agents' telephone

2  lines.   Defendant HSBC uses these devices to record each and every

3  telephone conversation on said telephone lines.

4  35.   Plaintiffs are informed and believe, and thereon allege, that during the

5  relevant time period, Defendant HSBC has had all of its calls to the public,

6  including those made to California residents, recorded without the knowledge

7  or consent of the public, including Plaintiffs and other California residents.

8  36.   Defendant HSBC's conduct alleged herein constitutes violations of the right

9  to privacy to the public, including Plaintiffs and other California residents,

10  and California Penal Code § 630 *et seq*.

11  ## CLASS ACTION ALLEGATIONS

12  37.   Plaintiff brings this action on behalf of herself and on behalf of all others

13  similarly situated ("the Class").

14  35.   Plaintiff seeks to represent the following subclasses:

15  a.  All California individuals, who, at any time during the applicable

16  limitations period beginning March 23, 2009, including any period tolled

17  preceding the filing of this complaint through the date of resolution, were

18  called by, and participated in, one or more conversations concerning their

19  credit card accounts with representatives of HSBC, or their agents, on a

20  landline telephone (hereinafter Subclass A) and whose calls were

21  recorded.

22  b.  All California individuals, who, at any time during the applicable

23  limitations period beginning March 23, 2009, including any period tolled

24  preceding the filing of this complaint through the date of resolution, were

25  called by, and participated in, one or more cellular telephone

26  conversations with representatives of HSBC, or their agents, on a cellular

27  telephone (hereinafter Subclass B) and whose calls were recorded.

28

HYDE & SWIGART
San Diego, California

36. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in The Class, but believes the Class members number in the tens of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

37. This suit seeks only statutory damages and injunctive relief for recovery of economic injury on behalf of The Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

38. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant HSBC's records or Defendants' agent's records.

39. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a. Whether Defendants have a policy of recording incoming and/or outgoing calls;

   b. Whether Defendant HSBC have a policy of recording incoming and/or outgoing calls initiated to a cellular telephone;

   c. Whether Defendant HSBC have a policy of recording incoming and/or outgoing calls initiated to landlines;

   d. Whether Defendant HSBC disclose to callers and/or obtains their consent that their incoming and/or outgoing telephone conversations were being recorded;

e.  Whether Defendant HSBC's policy of recording incoming and/or outgoing calls to cellular telephones constituted a violation of California Penal Code §§ 632.7; and 637;

f.  Whether Plaintiff, and The Class were damaged thereby, and the extent of damages for such violations; and

g.  Whether Defendant HSBC should be enjoined from engaging in such conduct in the future.

40.  Plaintiff is asserting claims that are typical of The Class because every other member of The Class, like Plaintiff, were exposed to virtually identical conduct and are entitled to the greater of statutory damages of $5,000 per violation or three times actual damages per violation pursuant to California Penal Code § 637.2(a).

41.  Plaintiff will fairly and adequately represent and protect the interests of The Class in that Plaintiff has no interest antagonistic to any member of The Class.

42.  Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

43.  Plaintiff has retained counsel experienced in handling class action claims to further ensure such protection.

44.  A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendants to comply with federal and California law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for

**Hyde & Swigart**
San Diego, California

1  violation of privacy are minimal.   Management of these claims is likely to

2  present significantly fewer difficulties than those presented in many class

3  claims.

4  45.  Defendants have acted on grounds generally applicable to the Class, thereby

5  making appropriate final injunctive relief and corresponding declaratory relief

6  with respect to the Class as a whole.

7  **FIRST CAUSE OF ACTION**
**INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 632**

8

9  46.  Plaintiffs incorporate by reference all of the above paragraphs of this

   Complaint as though fully stated herein.

10

11  47.  At all times relevant herein, Defendants routinely communicated by telephone

12  with Plaintiffs and other members of Subclass A in connection with Plaintiffs

13  and Subclass A members' credit card accounts in discussing confidential

   matters.

14

15  48.  At all times relevant herein, Defendants secretly recorded conversations

16  between Plaintiff and members of Subclass A and Defendants.

17  49.  In each of their conversations with Defendants, Plaintiff and members of

18  Subclass A discussed their credit card accounts and personal financial

19  circumstances and affairs.  It was reasonable for the Plaintiffs and members of

20  Subclass A to expect that the conversations would be confined to the parties to

21  the conversation, and that their conversations were not being overhead or

22  recorded.   Each of the conversations between Defendants and Subclass A

23  were "confidential communications(s)" within the meaning of Cal. Penal

   Code § 632(c).

24

25  50.  Cal. Penal Code § 632 prohibits a party from recording confidential

26  conversations without two-party consent. Defendants' confidential telephone

27  communications with Plaintiff and members of Subclass A were secretly and

28

HYDE & SWIGART
San Diego, California

1   surreptitiously recored by Defendants without obtaining consent to record
2   such conversations.

3   51.   Californians have a constitutional right to privacy.  Moreover, the California
4          Supreme Court has definitively linked the constitutionally protected right to
5          privacy within the purpose, intent and specific protections of the Privacy Act,
6          including specifically, Penal Code § 632.  "In addition, California's explicit
7          constitutional privacy provision (Cal. Const., 1 § 1) was enacted in part
8          specifically to protect California from overly intrusive business practices that
9          were seen to pose a significant and increasing threat to personal privacy.
10         (Citations omitted).  Thus, Plaintiff believes that California must be viewed as
11         having a strong and continuing interest in the full and vigorous application of
12         the provisions of section 632 prohibiting the recording of telephone
13         conversations without the knowledge or consent of all parties to the
14         conversation.

**SECOND CAUSE OF ACTION**
**INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 632.7**

38.   Plaintiffs incorporate by reference all of the above paragraphs of this
       Complaint as though fully stated herein.

39.   Californians have a constitutional right to privacy.  Moreover, the California
       Supreme Court has definitively linked the constitutionally protected right to
       privacy within the purpose, intent and specific protections of the Privacy Act,
       including specifically, Penal Code § 632.  "In addition, California's explicit
       constitutional privacy provision (Cal. Const., 1 § 1) was enacted in part
       specifically to protect California from overly intrusive business practices that
       were seen to pose a significant and increasing threat to personal privacy.
       (Citations omitted).  Thus, Plaintiff believes that California must be viewed as
       having a strong and continuing interest in the full and vigorous application of

the provisions of section 632 prohibiting the recording of telephone conversations without the knowledge or consent of all parties to the conversation.

40. California Penal Code § 632.7 prohibits in pertinent part "[e]very person who, without the consent of all parties to a communication…intentionally records, or assists in the…intentional recordation of, a communication transmitted between…a cellular radio telephone and a landline telephone." Thus, on its face, California Penal Code § 632.7 precludes the recording of all communications involving a cellular telephone.

41. Though similar, California Penal Code § 632 and 632.7 are not duplicative and protect separate rights. California Penal Code § 632.7 grants a wider range of protection to conversations where one participant uses a cellular phone or cordless phone. For example, the "confidential communication" requirement of California Penal Code § 632 is absent from California Penal Code § 632.7.

42. Defendants caused to be employed certain recording equipment on the telephone lines of all employees, officers, directors, and managers of Defendants.

43. Plaintiff is informed and believes, and thereupon alleges, that all these devises were maintained and utilized to record each and every outgoing cellular telephone conversation over said telephone lines with Subclass B.

44. Said recording equipment was used to record the telephone conversations of Plaintiffs and the members of Subclass B utilizing cellular telephones, all in violation of California Penal Code § 632.7.

45. Based on the foregoing, Plaintiffs and the members of Subclass B are entitled to, and below herein do pray for, their statutory remedies and damages, including but not limited to, those set forth in California Penal Code § 632.7; and California Penal Code § 637.2

HYDE & SWIGART
San Diego, California

1

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and The Class members the following relief against Defendants,

**FIRST CAUSE OF ACTION FOR INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 632**

• That this action be certified as a class action on behalf of Subclass A.

• Plaintiffs be appointed as the representative of The Class;

• For the greater of statutory damages of $5,000 per violation or three times actual damage per violation pursuant to Penal Code § 637.2(a)(1) for Plaintiffs and each member of The Class and Subclass A;

• Injunctive relief in the form of an order requiring Defendants to disgorge all ill-gotten gains and awarding Plaintiffs and Subclass A full restitution of all monies wrongfully acquired by Defendant by means of such unfair and unlawful conduct;

• That the Court preliminarily and permanently enjoin Defendants from overhearing, recording, and listening to each and every oncoming and outgoing telephone conversation with California resident, including Plaintiffs and Subclass A, without their prior consent, as required by California Penal Code § 630, *et seq.*, and to maintain the confidentiality of the information of Plaintiff and The Class.

• For costs of suit;

• For reasonable attorneys' fees;

• For such further relief as this Court deems necessary, just, and proper.

**SECOND CAUSE OF ACTION FOR INVASION OF PRIVACY: VIOLATION OF PENAL CODE § 632.7**

• That this action be certified as a class action on behalf of Subclass B.

• Plaintiffs be appointed as the representatives of Subclass B;

HYDE & SWIGART
San Diego, California

- For the greater of statutory damages of $5,000 per violation or three times actual damage per violation pursuant to Penal Code § 637.2(a) for Plaintiff and each member of Subclass B;

- For $5,000.00 per violation of California Penal Code § 632.7 for Plaintiffs and each member of Subclass B;

- Injunctive relief in the form of an order requiring Defendants to disgorge all ill-gotten gains and awarding Plaintiffs and The Class full restitution of all monies wrongfully acquired by Defendant by means of such unfair and unlawful conduct;

- That the Court preliminarily and permanently enjoin Defendants from overhearing, recording, and listening to each and every oncoming and outgoing telephone conversation with California resident, including Plaintiffs and The Class, without their prior consent, as required by California Penal Code § 630, *et seq.*, and to maintain the confidentiality of the information of Plaintiff and The Class.

- For costs of suit;

- For reasonable attorneys' fees;

- For such further relief as this Court deems necessary, just, and proper.

- 

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demand, a trial by jury.

Respectfully submitted,

Date: November 21, 2014            **Hyde & Swigart**

By:  /s Joshua B. Swigart
Joshua B. Swigart
*Attorneys for Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN: 216752)
tfriedman@attorneysforconsumers.com
324 South Beverly Blvd., Suite 725
Beverly Hills, CA 90211
Telephone:   (877) 206-4741
Facsimile:    (866) 633-0228
*Attorneys for Plaintiff*

# EXHIBIT E

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   GAIL MEDEIROS, et al.,                 CASE NO.:  2:15-cv-09093 JVS (AFMx)

11                Plaintiffs,               **ORDER GRANTING JOINT**
                                            **MOTION TO CONSOLIDATE**
12   TERRY FANNING, et al.,                 *FANNING* **AND** *LINDGREN* **WITH**
                                            *MEDEIROS*
13                Plaintiffs-Intervenors,

14

15         v.

16   HSBC CARD SERVICES INC., et al.,

17                Defendants.

18

19

20

21

22

23

24

25

26

27

28

1        Having considered the Stipulations of the parties to the *Fanning et al. v.*

2  *HSBC Card Services et al.*, C.D. Cal. Case No. 12-cv-0885 JVS (RNBx)

3  ("*Fanning*"), *Lindgren v. HSBC Card and Retail Services et al.*, C.D. Cal. Case

4  No. 14-cv-05615, ("*Lindgren*") and *Gail Medeiros, et al., v. HSBC Card Services*

5  *Inc., et al.*, C.D. Cal. Case No. 2:15-cv-9093-JVS-AFM ("*Medeiros*") actions

6  currently pending before this Court, and good cause having been shown:

7        **IT IS HEREBY ORDERED** that the Stipulations are **GRANTED**.  For

8  purposes of advancing the settlement process, the *Fanning* and *Lindgren* actions

9  are hereby consolidated with the *Medeiros* action for settlement purposes only.

10  For all future filings, the parties are to indicate on the caption page which of the

11  three cases the filing relates to.

12        IT IS SO ORDERED.

13

14  Dated:  July 27, 2016

15                              Hon. James V. Selna
                                   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING JOINT MOTION TO CONSOLIDATE
No. 2:15-cv-09093 JVS (AFMx)

# EXHIBIT F

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 GAIL MEDEIROS, et al., | Case Nos. 2:15-cv-09093-JVS-AFM |
| 11      Plaintiffs, | **8:12-cv-00885-JVS-RNB** |
|   vs. | 2:14-cv-05615-JVS-RNBx |
| 12 | **ORDER (1) CONDITIONALLY** |
| HSBC CARD SERVICES, INC. and HSBC | **CERTIFYING A SETTLEMENT** |
| 13 TECHNOLOGY & SERVICES (USA), | **CLASS, (2) PRELIMINARILY** |
| INC., | **APPROVING CLASS ACTION** |
| 14 | **SETTLEMENT, (3) APPROVING** |
| | **NOTICE PLAN AND (4) SETTING** |
| 15      Defendants. | **FINAL APPROVAL HEARING** |
| 16 TERRY J. FANNING, et al., | Date:  October 17, 2016 |
|      Plaintiffs, | Time:  1:30 p.m. |
| 17   vs. | Location: Courtroom 10A |
| 18 HSBC CARD SERVICES INC. and HSBC |      411 W. Fourth St. |
| TECHNOLOGY & SERVICES (USA), |      Santa Ana, CA 92701 |
| 19 INC., | |
|      Defendants. | |
| 20 | |
| STEFAN O. LINDGREN, | |
| 21 | |
|      Plaintiff, | |
| 22 | |
|   vs. | |
| 23 | |
| HSBC CARD SERVICES, INC. and HSBC | |
| 24 TECHNOLOGY & SERVICES (USA), INC., | |
| 25      Defendants. | |

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

This matter came before the Court on Plaintiffs' Motion for Preliminary Approval of the proposed class action settlement (the "Settlement") of the cases entitled *Fanning et al. v. HSBC Card Services, Inc. et al.*, Case No. 12-cv-00885-JVS-RNBx ("Fanning"); *Lindgren v. HSBC Card Services, Inc. et al.*, Case No. 14-cv-05615-JVS-RNBx ("Lindgren"); and *Gail Medeiros, et al. v. HSBC Card Services Inc., et al.*, Case No. 2:15-cv-09093-JVS-AFM ("Medeiros") (collectively "the Actions"). The Actions were brought by plaintiffs Terry Fanning, Tatiana Jabbar, Stefan Lindgren, Gail Medeiros, Tracy T. Bomberger, Peter Morrissey, and Julie Pulatie, individually and on behalf of all others similarly situated, against defendants HSBC Card Services Inc. and HSBC Technology & Services (USA) Inc. ("HSBC"). Collectively, Gail Medeiros, Tracy T. Bomberger, Peter Morrissey, Julie Pulatie, Stefan O. Lindgren, Terry J. Fanning and Tatiana Jabbar are referred to herein as the "Plaintiffs" and together, with HSBC, the "Parties."

Based on this Court's review of the Parties' Settlement Agreement and Release (the "Agreement"), Plaintiffs' Motion for Preliminary Approval of Settlement, and the arguments of counsel, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:

1. <u>Settlement Terms</u>. Unless otherwise defined herein, all terms in this Order shall have the meanings ascribed to them in the Agreement.

2. <u>Jurisdiction</u>. The Court has jurisdiction over the subject matter of the Actions, the Parties, and all persons in the Settlement Class.

3. <u>Scope of Settlement</u>. The Agreement resolves all claims alleged in the operative complaints filed in each of the Actions.

4. <u>Preliminary Approval of Proposed Agreement</u>. The Court has conducted a preliminary evaluation of the Settlement as set forth in the Agreement. Based on this preliminary evaluation, the Court finds that: (a) the Agreement is fair, reasonable and adequate, and within the range of possible approval; (b) the

[PROPOSED] ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING
LA 52005897

Agreement has been negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case; and (c) with respect to the forms of notice of the material terms of the Settlement to persons in the Settlement Class for their consideration (Exs. 3, 4, 5 and 6 to the Agreement), that notice is appropriate and warranted.  Therefore, the Court grants preliminary approval of the Settlement.

5.    <u>Class Certification for Settlement Purposes Only</u>.  The Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, conditionally certifies, for purposes of this Settlement only, the following Settlement Class:

> All persons in California who received a telephone call between March 23, 2009 and May 1, 2012 from or on behalf of HSBC Card Services Inc. and whose call was recorded or monitored by or on behalf of HSBC Card Services Inc. or HSBC Technology & Services (USA) Inc.

"Settlement Class Member" means any person in the Settlement Class who does not validly exclude themselves.

6.    <u>The Settlement Class Satisfies Rule 23's Requirements</u>.  In connection with this conditional certification, the Court makes the following preliminary findings:

(a)    The Settlement Class appears to be so numerous that joinder of all members is impracticable;

(b)    There appear to be questions of law or fact common to the Settlement Class for purposes of determining whether the Settlement should be approved;

(c)    Plaintiffs' claims appear to be typical of the claims being resolved through the Settlement;

(d)    Plaintiffs appear to be capable of fairly and adequately protecting the interests of all members of the Settlement Class in connection with the Settlement;

- 2 -

ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING

LA 52005897

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1      (e)    For purposes of determining whether the Agreement is fair,
2  reasonable and adequate, common questions of law and fact appear to predominate
3  over questions affecting only individual persons in the Settlement Class.
4  Accordingly, the Settlement Class appears to be sufficiently cohesive to warrant
5  settlement by representation; and

6      (f)    For purposes of the Settlement, certification of the Settlement
7  Class appears to be superior to other available methods for the fair and efficient
8  settlement of the claims of the Settlement Class.

9      7.   <u>Class Representatives</u>.  The Court appoints Plaintiffs to act as the
10  representatives of the Settlement Class pursuant to Rule 23 of the Federal Rules of
11  Civil Procedure.

12      8.   <u>Class Counsel</u>.  The Court appoints Hyde & Swigart, Kazerouni Law
13  Group, APC, Law Offices of Todd M. Friedman, P.C., Altshuler Berzon LLP, The
14  Mehdi Firm PC, Arleo Law Firm PLC, and Bailey and Galyen as Class Counsel
15  pursuant to Rule 23 of the Federal Rules of Civil Procedure.

16      9.   <u>Final Approval Hearing</u>.  At 1:30 p.m. on June 27, 2017, in Courtroom
17  10A of the United States Courthouse, 411 West Fourth St., Santa Ana, CA 92701, or
18  at such other date and time later set by Court Order, this Court will hold a Final
19  Approval Hearing on the fairness, adequacy and reasonableness of the Agreement
20  and to determine whether (a) final approval of the Settlement embodied by the
21  Agreement should be granted, and (b) Class Counsel's application for attorneys' fees
22  and expenses, and service awards to Plaintiffs, should be granted, and in what
23  amount.  No later than February 14, 2017, Plaintiffs must file papers in support of
24  Class Counsel's application for attorneys' fees and expenses and the service awards
25  to Plaintiffs.  No later than May 15, 2017, which is thirty (30) days after the Opt-Out
26  and Objection Deadline, papers in support of final approval of the Settlement and
27  response to any written objections must be filed.

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

10.    <u>Settlement Claims Administrator</u>. KCC LLC is hereby appointed as the Claims Administrator and shall be required to perform all the duties of the Claims Administrator as set forth in the Agreement and this Order.

11.    <u>Class Notice</u>.  The Court approves the proposed plan for giving notice to the Settlement Class directly (using e-mail and post cards), Publication Notice and through establishment of a Settlement Website, as more fully described in Plaintiffs' Motion and the Agreement ("Notice Plan").  The Notice Plan, in form, method and content, complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances.  The Court hereby directs the Parties and the Claims Administrator to complete all aspects of the Notice Plan no later than January 15, 2017 ("Notice Deadline").

12.    <u>Proof of Class Notice</u>.  The Claims Administrator will file with the Court by no later than May 15, 2017, which is thirty (30) days after the Opt-Out and Objection Deadline, proof that notice was provided in accordance with the Agreement and this Order.

13.    <u>Opt-Out and Objection Deadline</u>.  Persons in the Settlement Class who wish to either object to the Settlement or request exclusion from the Settlement Class must do so by April 15, 2017, which is ninety (90) days after the Notice Deadline. Persons in the Settlement Class may not both object and opt-out.  If a person both requests to opt-out and objects, the request to opt-out will control.

14.    <u>Exclusion from the Settlement Class</u>.  To request exclusion from the Settlement Class, a person in the Settlement Class must follow the directions in the Class Notice and send a compliant request to the Claims Administrator at the address designated in the Class Notice by the Opt-Out and Objection Deadline.  Exclusion requests must: (i) be signed by the person in the Settlement Class who is requesting exclusion; (ii) include the full name, address, telephone number(s), and account

LA 52005897

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

number(s) of the person in the Settlement Class requesting exclusion (except that persons in the Settlement Class who do not have and have not had a credit card relationship with HSBC Bank Nevada, N.A. shall not be required to include an account number); and (iii) include the following statement: "I/we request to be excluded from the settlement in the <u>HSBC California Call Recording Lawsuits</u>." No request for exclusion will be valid unless all of the information described above is included. For any person in the Settlement Class who has more than one account, the exclusion request shall include all accounts. No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person in the Settlement Class, may exclude any other person in the Settlement Class from the Settlement Class.

15. <u>Filing of Exclusion Requests</u>. The Claims Administrator will retain a copy of all requests for exclusion. Not later than thirty (30) days after the Opt-Out and Objection Deadline, the Claims Administrator will file, under seal, with the Court a declaration that lists all of the exclusion requests received.

16. <u>Objections to the Settlement</u>. To object to the Settlement, Settlement Class Members must follow the directions below and in the Class Notice and file a written objection with the Court by the Opt-Out and Objection Deadline. Settlement Class Members also must mail the objection by the Opt-Out and Objection Deadline to each of the following: (a) Class Counsel – Abbas Kazerounian, Kazerouni Law Group, 245 Fischer Avenue, Unit D1, Costa Mesa, CA 92626, and Michael Rubin, Altshuler Berzon LLP, 177 Post Street, Suite 300, San Francisco, CA 94108; and (b) HSBC's Counsel – Julia B. Strickland, Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, California 90067. To be valid, the objection must: (i) attach documents establishing, or provide information sufficient to allow the parties to confirm, that the objector is a Settlement Class Member, including but not limited to the objector's full name,

ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING

LA 52005897

address, and the telephone number(s) called by or on behalf of HSBC within the Class Period; (ii) include a statement of the specific objections; (iii) state the grounds for objection, as well as identify any documents which the objector desires the Court to consider; (iv) whether the objector intends to appear at the Final Approval Hearing on his or her own behalf or through counsel; and (v) disclose every prior objection to any class action settlement ever made by the objector including the case name, case number, and disposition of the prior objection(s). The Court will not consider an objection unless the objection includes all of the foregoing information.

17.     Settlement Binding on Settlement Class Members.   Any Settlement Class Member who fails to timely comply with Paragraph 16 will not be permitted to object to the Settlement at the Final Approval Hearing, will be foreclosed from seeking any review of the Settlement by appeal or other means, will be deemed to have waived his, her or its objections, and will be forever barred from making any objections in the Action or any other related action or proceeding.   All Settlement Class Members will be bound by all determinations and judgments in the Action, whether favorable or unfavorable to the Settlement Class.   If a timely and valid exclusion request is made by a person in the Settlement Class, then the Agreement and any determinations and judgments concerning the Settlement will not bind the excluded person.

18.     Clerk of the Court to Redact Objections.   For any objection filed, the Clerk of the Court is ordered to redact any social security number, the street address, telephone number and last name except first letter of last name in order to protect the objector's privacy.   The objector's first name and city, state and zip code, as well as the objection, will not be redacted.

19.     Stay of These Actions.   Pending the final determination of whether the Settlement should be approved, all pre-trial proceedings in these Actions are stayed.

ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING

LA 52005897

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

20.   <u>Stay of Actions or Claims Asserting Released Claims by Plaintiffs or the Settlement Class</u>.   Pending the final determination of whether the Settlement should be approved, Plaintiffs and all persons in the Settlement Class are hereby stayed and enjoined from commencing, pursuing, maintaining, enforcing or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral or other forum, against any of the Released Parties.   Such injunction will remain in force until the Court enters the Final Approval Order or until such time as the Parties notify the Court that the Settlement has been terminated.   Nothing herein will prevent any person in the Settlement Class, or any person actually or purportedly acting on behalf of any such person (s), from taking any actions to stay or dismiss any Released Claim(s).   This injunction is necessary to protect and effectuate the Agreement, this Preliminary Approval Order, and the Court's flexibility and authority to effectuate the Agreement and to enter judgment when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its judgments.   This injunction does not apply to any person who requests exclusion from the Settlement.

21.   <u>Conditional Certification of the Settlement Class</u>.   If for any reason whatsoever this Settlement is not finalized or the Settlement as detailed in the Agreement is not finally approved by the Court, the certification of the Settlement Class shall be void and the Parties and the Action will return to the status quo as it existed prior to the Agreement, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings, in response to any motion seeking class certification, any motion seeking to compel arbitration or otherwise asserted at any other stage of the Action or in any other proceeding.   No agreements, documents or statements made by or entered into by any Party in connection with the Settlement, including but not limited to confirmatory discovery, may be used by Plaintiffs, any person in the proposed Settlement Class, HSBC or any other person to establish liability, any

LA 52005897

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

defense and/or any of the elements of class certification, whether in the Action or in any other proceeding.

22.   <u>Termination</u>.   In the event that the Settlement is not approved, or is terminated, canceled or fails to become effective for any reason, the money remaining in the Settlement Fund (including accrued interest), less expenses and taxes incurred or due and owing and payable from the Settlement Fund in accordance with the Agreement, shall be returned to HSBC within 15 days of the event that causes the Agreement to not become effective.

23.   <u>No Admission of Liability</u>.   The Agreement and any and all negotiations, documents, and discussions associated with it, will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, or of any liability or wrongdoing by HSBC, or the truth of any of the claims.  Evidence relating to the Agreement will not be discoverable or used, directly or indirectly, in any way, whether in the Actions or in any other action or proceeding, except for purposes of demonstrating, describing, implementing or enforcing the terms and conditions of the Agreement, this Order and the Final Approval Order.

24.   <u>Reasonable Procedures to Effectuate the Settlement</u>.   Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without further approval of the Court, minor changes to the form or content of the Class Notice and Claim Form and other exhibits that they jointly agree are reasonable and necessary.  The Court reserves the right to approve the Agreement with such modifications, if any, as may be agreed to by the Parties without further notice to persons in the Settlement Class.

25.   <u>Schedule of Future Events</u>.   Accordingly, the following are the deadlines by which certain events must occur:

ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING

LA 52005897

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

| January 15, 2017 | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
|---|---|
| **February 14, 2017**<br><br>[30 days after the Notice Deadline] | Deadline for filing of Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards |
| **April 15, 2017**<br><br>[90 days after the Notice Deadline] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| **April 15, 2017**<br><br>[90 days after the Notice Deadline] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| **May 15, 2017**<br><br>[30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following:<br><br>(1) List of persons who made timely and proper requests for exclusion (under seal);<br>(2) Proof of Class Notice; and<br>(3) Motion and memorandum in support of final approval, including responses to any objections. |
| **June 27, 2017 at 1:30 p.m.** | Final Approval Hearing |

**IT IS SO ORDERED.**

Dated: October 19, 2016

By: _____

    Honorable James V. Selna
    United States District Judge

- 9 -

ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN AND (4) SETTING FINAL APPROVAL HEARING

LA 52005897

# EXHIBIT G

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO

## MINUTE ORDER

DATE: 08/05/2016                TIME: 03:13:00 PM        DEPT:

JUDICIAL OFFICER PRESIDING: Earl H. Maas, III
CLERK:  Noreen McKinley
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:

CASE NO: **37-2014-00023795-CU-MC-NC**   CASE INIT.DATE: 07/17/2014
CASE TITLE: **Kempton vs Capital One Financial Corporation [IMAGED]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Misc Complaints - Other

## APPEARANCES

The Court, having taken the above-entitled matter under submission on 7/29/16 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Defendants' motion for summary judgment is granted.

Defendants have met their initial burden of proof.

Plaintiffs have failed to establish a triable issue of material fact as to the first cause of action and whether Defendants recorded the phone calls "with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation." Marich v. MGM/UA Telecomms., Inc. (2003) 113 Cal.App.4th 415, 421.

Plaintiffs have failed to establish a triable issue of material fact as to the second cause of action and whether Defendants intercepted and intentionally recorded a communication involving a cell phone or cordless phone.

_Judge Earl H. Maas, III_
_____
Judge Earl H. Maas, III

# EXHIBIT H

4  DEPARTMENT N-28          HON. EARL H. MAAS, III, JUDGE

5  RON KEMPTON, an individual,      )
   et al.,                          )
6                                    )
                      Plaintiffs,    )
7                                    )
      vs.                            )  Case No.
8                                    )  37-2014-00023795
   CAPITAL ONE FINANCIAL            )  CU-MC-NC
9  CORPORATION, et al.,             )
                                     )
10                    Defendants.    )
   _____  )
11

12              TRANSCRIPT OF PROCEEDINGS

13                 November 4, 2016

14                Pages 1 through 8

15

16  Appearances:

17

18  For the Defendants      Stroock & Stroock & Lavan LLP
    and Cross-              By:  Shannon E. Dudic
19  Complaints HSBC Card    2029 Century Park East
    Services Inc. and       Los Angeles, California 90067
20  HSBC Technology &       (310) 556-5800
    Services (USA) Inc.:
21

22  For Cross-Defendant     Burkhardt & Larson
    Alejandra Rosas:        By:  Francisco Garcia
23                          6006 El Tordo, Suite 200
                            Rancho Santa Fe, California 92067
24                          (858) 756-3743

25

26

27
   Job No. 352757
28                          Diane M. Lytle, CSR 8606

1 Vista, California, Friday, November 4, 2016, 1:44 p.m.

2

3     THE COURT:  Kempton versus Capital One.

4     MS. DUDIC:  Good morning, your Honor, Shannon Dudic

5 on behalf of the agencies, the defendants, and

6 cross-defendants.

7     MR. GARCIA:  Good morning, your Honor.  Francisco

8 Garcia, Burkhardt & Larson, on behalf of Cross-Defendant

9 Alejandra Rojas.

10     THE COURT:  Okay.

11     I'm not sure which table you should be at.

12     MR. GARCIA:  I think this one is right because

13 we're kind of defendants.

14     MS. DUDIC:  Yeah.

15     THE COURT:  You should be over there.  All right.

16     So you're submitting?

17     MS. DUDIC:  I submitted on the tentative, yes, your

18 Honor.

19     MR. GARCIA:  We are not submitting, your Honor,

20 without some sort of a fight.

21     THE COURT:  Go ahead.

22     MR. GARCIA:  All right.

23     Your Honor, right now, the tentative, it looks like

24 you're focused on defendant's assertion that Alejandra

25 was absolutely prohibited from making personal calls.

26     THE COURT:  No, no.  Maybe I can make it clear for

27 you.

28     MR. GARCIA:  Okay.

1      THE COURT:  I mean, I've already ruled on the
2  primary claim --
3      MR. GARCIA:  Yes.
4      THE COURT:  -- that I don't think the statute was
5  set up for this.  And there is, you know, a serious
6  concern if, in fact, this area fell within the statute,
7  then any employee who was unhappy with their employment
8  could start sneaking in personal phone calls to their
9  brother, their cousin, their mother and create liability
10  on the part of -- I'm not saying that's what happened,
11  but could create liability because almost be an
12  automatic responsibility.
13      As I look at it, I think that there's a question of
14  fact -- well, there's one, the issue of law whether they
15  can held responsible for it at all.  That, we're not
16  talking about so much.
17      But there is a question as to -- in my mind, both
18  legally and factually, as to whether her actions -- and
19  this wasn't the occasional use, which I think I would
20  probably kind of roll my eyes at, this appears to be an
21  extensive use of the phone for nonwork-related matters
22  and put her in this position.
23      Now, I don't believe that the facts have
24  established at the point that she intentionally did this
25  to expose her employer to liability.
26      But I think there's a fairly decent argument that
27  it was reckless, in light of the way it's all worked
28  out.  And I don't think that it would -- I think a trier

1  of fact could find that she acted in such a way as to

2  put her employer at risk for, really,

3  nonemployment-related purposes, which seems to me to be

4  the exception.  So it's kind unique.

5      I mean, I don't know what's going to happen with

6  this case.  I'm fairly confident if the party that's not

7  here either doesn't appeal or isn't successful on the

8  appeal, this case is going to go away.  I can't imagine

9  that they're going to throw good money after that.  But

10  that's it.

11      I believe a trier of fact could find that your

12  client's actions placed her employer at risk.  And

13  that's especially true if her mother's interpretation of

14  the statute is accurate and I'm wrong.

15      So it's kind of a weird one.  If I'm right, there's

16  no liability on anybody, you move on.  If I'm wrong,

17  there's liability -- potentially liability on them, but

18  then that's caused by the action of your client.  It's

19  an odd one.

20      MR. GARCIA:  It is, your Honor.

21      I guess I'll touch, just based on what you said

22  right there, on the intent where in order to show

23  intent, there's been no facts that our client actually

24  intended to record the calls with her mother.

25      THE COURT:  She knew they were recorded.

26      MR. GARCIA:  But she didn't know they were all

27  recorded.  She knew there was a possibility, but the

28  possibility --

1      THE COURT:  And, like I said, if there's one or two

2  calls, yeah.  But she's playing Russian roulette with a

3  six-shooter and pulling the trigger seven times.

4  Eventually, you're going to lose that situation.

5      There were -- I don't remember the exact number,

6  numerous phone calls that were not, you know, even from

7  what I could tell, necessary to make.  They were the

8  kinds that could have waited until she had an

9  opportunity to be away from work.

10      But that's why I said if it was just a couple, I

11  would say, yeah.  But we're talking so many, knowing

12  whether she knew every call was going to be recorded or

13  most calls were going to be recorded or even 10 percent

14  of the calls were going to be recorded.

15      She actually thought she would have known that

16  there would be some of those phone calls recorded,

17  therefore, making them potentially liable.

18      And I thought that the -- you know, the vehicle

19  case where the person was able to drive the truck home

20  and back or stop in line was pretty persuasive.  But on

21  the time where, you know, drove it 140 miles out of the

22  way, that was not in the course and scope of the

23  employment.

24      So we're having to use a lot of different types of

25  law to analyze this case where there's no case law.

26      Did you write the motion?

27      MR. GARCIA:  Yes.

28      THE COURT:  I thought it was a great motion.

1      MR. GARCIA:  I did, your Honor.

2      THE COURT:  Yeah, I thought it was a great motion.

3      I just think you have such a unique case.  And

4  since I think there's probably a reasonable probability

5  it's going to the court of appeal, I think we have to

6  wait and let them tell us what they think of this.

7      It's weird that I invite the court of appeal to

8  tell me what to do, but I think in this one, we're all

9  going to find out together.

10      MR. GARCIA:  Okay.

11      THE COURT:  Okay.

12      It was a very good motion, though, but because it

13  was so unique, I just have to rely on all these general

14  kind of --

15      MR. GARCIA:  I understand.

16      MS. DUDIC:  Okay.

17      Your Honor, of course, we agree with your

18  assessment here.

19      I do want to remind the Court that we're before you

20  on a status conference as well.  Approximately a month

21  ago, we asked that the case be stayed pending the

22  outcome of the judgment in the principal case, whether

23  the plaintiff will appeal it, and we reiterate that

24  request again today.

25      THE COURT:  Well, the time for appeal, as I recall,

26  still got another month to go; right?

27      MS. DUDIC:  That's correct.

28      MR. GARCIA:  December 8th or 10th, I believe.

1      MS. DUDIC:  December 10th.

2      THE COURT:  You wanted to stop this, which I wasn't

3  willing to do.  And it was a very, you know, interesting

4  motion to read and to try to figure out what to do with

5  this.

6      I think at this point, there's not enough time for

7  anyone to do anything for the time of the appeal to run,

8  so I'm not going to stay the case.

9      However, if a notice of appeal is filed, I will

10  stay the case.  So I'm going to say that if there's an

11  appeal, it will be automatically stayed because they're

12  too interwoven to go separately.  But if there's no

13  appeal, then I encourage you all to talk and figure out

14  a way to get rid of it.

15      MS. DUDIC:  Thank you, your Honor.

16      MR. GARCIA:  Thank you, your Honor.

17      THE COURT:  Sound reasonable?

18      MS. DUDIC:  Yes, your Honor.

19      (The proceedings concluded at 1:51 p.m.)

20                          ***

21

22

23

24

25

26

27

28

1    STATE OF CALIFORNIA ) ss

2

3         I, Diane M. Lytle, CSR 8606, do hereby declare:

4

5         That the above foregoing seven (7) pages contain a

6    full, true and correct transcription of the proceedings.

7

8         I further declare that I have no interest in the

9    event of the action.

10

11        I declare under penalty of perjury under the laws

12   of the State of California that the foregoing is true

13   and correct.

14

15        WITNESS my hand this 17th_ day of

16   November, 2016

17

18

19   _____

     Diane M. Lytle, CSR 8606

20

21

22

23

24

25

26

27

28

# EXHIBIT I

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 12/02/15

DEPT. 307

HONORABLE AMY D. HOGUE      JUDGE | N. NAVARRO      DEPUTY CLERK

HONORABLE      JUDGE PRO TEM
add on

     C. JONES, C.A.      Deputy Sheriff | NONE      ELECTRONIC RECORDING MONITOR

     Reporter

11:30 am | BC569111

Plaintiff
Counsel

YEVGENIYA GRANINA              NO APPEARANCES
VS
EDDIE BAUER LLC

Defendant
Counsel

---

**NATURE OF PROCEEDINGS:**

COURT'S RULING ON SUBMITTED MATTER

This Court heard oral argument on Defendant's Demurrer and Motion to Strike Portions of Plaintiff's Complaint on September 28, 2015. Plaintiff requested permission to file Points and Authorities by October 30, 2015. Defendant was given until November 20, 2015 to file a Reply. The matter was taken under submission on November 20, 2015.

After consideration of the moving papers, oral argument, and supplemental filings, the Court rules as follows:

Defendant Eddie Bauer LLC's Demurrer to Plaintiff's Complaint is SUSTAINED WITHOUT LEAVE TO AMEND THE EXISTING CAUSE OF ACTION BUT WITH 30 DAYS LEAVE TO ADD A CAUSE OF ACTION BASED ON SECTION 632.

Defendant's Motion to Strike is deemed MOOT.

The Court's "ORDER SUSTAINING DEMURRER AND DENYING MOTION TO STRIKE" is filed and entered this date.

The Court sets a Further Status Conference for February 29, 2016 at 11:00 a.m. in Department 307.

Clerk gives notice.

                 Page    1 of   2     DEPT. 307

MINUTES ENTERED
12/02/15
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 12/02/15                                                      DEPT. 307

HONORABLE  AMY D. HOGUE          JUDGE    N. NAVARRO          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
add on
           C. JONES, C.A.      Deputy Sheriff    NONE              Reporter

11:30 am  BC569111                          Plaintiff
                                            Counsel
          YEVGENIYA GRANINA                        NO APPEARANCES
          VS                                Defendant
          EDDIE BAUER LLC                   Counsel

NATURE OF PROCEEDINGS:

           CERTIFICATE OF ELECTRONIC SERVICE
           CODE OF CIVIL PROCEDURE 1010.6

I, the below named Executive Officer/Clerk of the
above entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served one copy of the minute order of 12/2/15
and the Court's ORDER SUSTAINING DEMURRER
entered herein, on 12/01/15, upon each
party or counsel of record in the above entitled
action, by electronically serving the document on
the CaseAnywhere website
on 12/2/15 from my place of business,
Central Civil West Courthouse, 600 South
Commonwealth Avenue, Los Angeles, California 90005
in accordance with standard court practices.


Dated: 12/2/15

Sherri R. Carter, Executive Officer/Clerk

By: _____, Deputy Clerk
           N. NAVARRO


                Page   2 of   2    DEPT. 307

MINUTES ENTERED
12/02/15
COUNTY CLERK

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 01 2015

Sherri R. Carter, Executive Officer/Clerk
By: Nancy Navarro, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| YEVGENIYA GRANINA, et al. | Case No. BC569111 |
| Plaintiffs, | |
| | ORDER SUSTAINING DEMURRER AND DENYING MOTION TO STRIKE |
| vs. | Hearing Date: Sept. 28, 2015 |
| | Time: 2:00 p.m. |
| EDDIE BAUER, LLC et al. | Dept.: 307 |
| Defendants | |

On behalf of herself and putative class members, Plaintiff claims that Defendant Eddie Bauer LLC ("Eddie Bauer") unlawfully recorded her telephone calls. Plaintiff alleges that she telephoned Eddie Bauer's toll-free number on December 4 and December 10, 2014, and spoke to one or more Eddie Bauer representatives about a purchase. (Complaint, ¶15.) She further alleges that she disclosed private information such as her name, address, and credit card number in the telephone calls and that Eddie Bauer recorded the conversations without her consent. (Id.)

Her Complaint alleges a single cause of action seeking statutory damages for Eddie Bauer's alleged violation of Penal Code Section 632.7.

Eddie Bauer demurs to Plaintiff's class action Complaint arguing that Penal Code Section 632.7 only prohibits third parties from recording wireless telephone calls and provides no relief when a party to the communication allegedly records the conversation. Eddie Bauer also moves to strike Plaintiff's request for an award of $5,000 for each alleged violation stated in Plaintiff's prayer for relief and in Paragraph 35 of the Complaint.

The Court sustains the demurrer because Plaintiff has failed to allege that, without her consent, Eddie Bauer both received and intentionally recorded her telephone communication. To the contrary, by alleging that she initiated the calls to Eddie Bauer, she admits that Eddie Bauer received the communications with her consent. Plaintiff therefore fails to state a cause of action for violation of Section 632.7. Eddie Bauer's Motion to Strike is moot.

A.     Relevant Provisions in Chapter 15 Focus on Third Party Interception.

To determine whether Plaintiff alleges an actionable claim, the Court must interpret Penal Code Section 632.7. A court interprets a statute to ascertain the intent of the legislature and to effectuate the purpose of the law. A court should harmonize provisions relating to the same subject matter to effectuate that purpose. 7 Witkin, Summary of Cal. Law (10th Ed. 2005), Ch. X, §115 (citing *DeYoung v. San Diego* (1983) 147 C.A.3d 11, 17 (disapproved on other grounds in *Yamaha v. State Board of Equalization* (1998) 19 Cal. 4th 1, 10). A court should interpret statutory provisions to give a reasonable and common sense interpretation consistent with the purpose of the statute. (Id.) If possible, a court should also give significance to every word and

consider every clause in the context of the whole. (Id.) A court should also consider context, legislation on the same subject, public policy, and contemporaneous construction. (Id.)

Mindful of these rules, this Court examines, in chronological order, the relevant forms of unlawful conduct that the Legislature has proscribed in the laws enacted under Chapter 15.

1.    Section 632. Eavesdropping on or recording confidential communications.

As enacted in 1967, Section 632 addressed the intentional use of electronic and other devices to eavesdrop on and/or record telephonic communications without consent. With respect to unlawful recording, Section 632 states that "[e]very person who intentionally and without the consent of all parties to a confidential communication, by means of any [recording device] . . . records the confidential communication . . . whether the communication is . . . by means of . . . a telegraph, telephone, or other device, except a radio, shall be punished . . . ." (Id.) The Legislature enacted this provision when telephone communications were transmitted by wires (landlines) and before the advent of cellular and cordless telephones operating on radio frequencies approved by the FCC.

2.    Section 632.5. Cellular radio telephone interceptions.

When technology evolved to permit wireless communication among cellular telephone users via FCC approved radio waves susceptible to interception, California acted to protect the privacy of wireless telephone communications. In the Cellular Radio Telephone Privacy Act of 1985, the Legislature acknowledged "the advent of widespread use of cellular radio telephone technology," and declared that "parties to a cellular radio telephone conversation have a right of privacy in that communication,   (Sect. 1 and 2 of Stats. 1985, c. 909.) Focusing on unwanted

3

third parties to wireless communications, the Legislature explained that "[the] act [was] intended to provide legal recourse to those persons whose private cellular radio telephone communications have been maliciously invaded by persons not intended to receive such communications." (Id.) Under Section 632.5, "[e]very person who, maliciously and without the consent of all parties to the communication, intercepts [or] receives a communication transmitted between cellular radio telephones or between any cellular radio telephone and a landline telephone shall be punished . . . ."[1]

        3.    Section 632.6. Cordless or cellular telephones; interception or receipt of communications without consent; punishment; exceptions.

Five years later, in 1990, the Legislature passed a similar provision protecting communications transmitted by a different technology – cordless telephones transmitting wireless radio wave communications between a "base" unit and a "remote" telephone handset. (Section 632.6(c).)    Enacting Penal Code Section 632.6, the Legislature again focused on third parties, declaring that "[i]ncreasing utilization of cordless telephone technology means that persons will be conversing using a technology which cannot guarantee privacy in the same way that it is guaranteed over the wire-based public switched network." (Sect. 2 of Stats. 1990 c. 696 (AB 3457).)  Focusing again on third parties, the Legislature stated that the "act is intended to provide a legal recourse to those persons whose cordless telephone communications have been maliciously invaded by persons not intended to receive those communications."  Mirroring the language of Section 632.5, Section 632.6 provides that "[e]very person who maliciously and

---

[1] The Act defines "cellular radio telephone" as a wireless telephone authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones").  (Section 632.5(c).)

4

without the consent of all parties" "intercepts" or otherwise "receives" a cordless telephonic communication "shall be punished."

> 4. Section 632.7: Unlawful Interception or Receipt and Unlawful Recording of Radio Communications.

When the Legislature enacted Section 632.7(a) a couple of years later, they focused on punishing third parties who recorded the wireless telephone communications that they intercepted or otherwise received. Under Section 632.7, "[e]very person who, without the consent of all parties to a communication, intercepts or receives *and* intentionally records . . . a [telephonic] communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone or a cordless telephone and a cellular radio telephone, shall be punished. . . ." (Emphasis added.) Unlike Sections 632.6 and 632.2, this provision does not require a *malicious* interception or receipt of the wireless communication. It does, however, require an *intentional* recording.

> B. A Person Cannot Be Punished or Fined under Section 632.7 Unless He or She Intercepted or Received a Communication without Consent and Intentionally Recorded the Communication without Consent.

Under the plain language of Section 632.7, a person may not be punished unless he or she engages in *both* the unconsented receipt and the intentional unconsented recording of a telephone call. The phrase "without the consent of all parties," which precedes all verbs in the sentence, necessarily modifies all succeeding verbs (intercept, receive and record). The conjunction "or" between "intercepts" and "receives" means the statute applies to any person who engages in

5

either form of conduct without consent. The conjunction "and" means that violation of the statute requires two discrete activities: (1) an unlawful interception or receipt *and* (2) an intentional recording. There is no ambiguity in this language.

The Court's interpretation is consistent with the Legislative history of the various statutes outline above and consistent with the Legislative history for Section 632.7 presented in Defendant's moving papers. As explained in his Statement of Intent, the author of the bill, Lloyd G. Connelly, was concerned that "under [then] current law" [Section 632.6 passed in 1990], it [was] only illegal to 'maliciously' intercept a conversation transmitted between [cordless telephones]. There [was] no prohibition against recording a conversation transmitted between cellular or cordless telephones." He went on to explain that "[t]he innocent, merely curious, or non-malicious interception of cellular or cordless telephone conversations will remain legal [but that ] it will be illegal to record the same conversations." (Defendants Request for Judicial Notice, Exh. 3).

The Court's interpretation harmonizes what otherwise appears to be an inconsistency between Section 632, which punishes the intentional recording of *confidential* communications by a party to an otherwise consensual communication, and Section 632.7, which punishes the intentional recording of wireless communications, regardless whether the information is confidential, so long as the recorder gained access to the communication without consent.

This Court's interpretation is also consistent with *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 776 (noting that in enacting the various provisions in Chapter 15, the Legislature protected against intentional and nonconsensual recording of wireless telephone conversations regardless of the content of the conversation or the type of telephone involved); *Ades v. Omni Hotels Management Corp.,* (2014) 46 F.Supp.3d 999 (finding that Section 632.7 is not

6

necessarily restricted to third party receipt or interception of a communication among or between other parties).

Defendant argues that Section 632.7 "does not cover the recording of a communication after it reaches the company being called and is routed to a customer service agent for handing" because, at that point, "the communication is no longer being transmitted between devices." (Defendant's Points and Authorities, p. 7.) This is not an argument that can be addressed on demurrer because the Court has no allegation or evidence that Plaintiff's calls, were routed to a customer service representative or that when Eddie Bauer recorded the call, it no longer involved wireless communication. Because Plaintiff alleges that she was on her wireless telephone when she called Eddie Bauer, it is difficult for the Court to understand how the internal transfer at Eddie Bauer eliminated a wireless communication.

The Court generally agrees with Defendant's argument that Section 632.7 was designed to prohibit third parties, who intercepted or otherwise received wireless communications, from intentionally recording them. (Id. p. 8.) There is no doubt that, beginning with its enactment of Section 632.5, the Legislature has been focused on the problem of intercepted wireless telephone calls, and that Sections 632.5, 632.6 and 632.7 reflect its efforts to protect them from eavesdropping and recording. These provisions broadly define "interception" to encompass any "receipt" of a wireless call. They also broadly prohibit "every person" from maliciously eavesdropping on wireless telephone calls. As a result, they are reasonably susceptible of permitting prosecution of a party to a wireless communication along with third parties who, unbeknownst to the parties, intercept or receive the communication.

However, it is difficult to conceive how, in practice, the State would enforce these provisions against a party to the wireless communication. Because speech is a voluntary process, it is difficult to imagine how someone talking to known party via wireless telephone could fail to consent to that party's *receipt* of the communication. While the Court agrees with Plaintiff that Section 632.7 applies to "every person," including a party to the communication,

1 the practical effect of the remaining language (requiring (1) the unconsented receipt (or

2 interception) *and* (2) the intentional unconsented recording of that communication) appears to

3 limit prosecution to third parties.

4     The interpretation urged by Plaintiff is also problematical because it places Section 632.7

5 in conflict with Section 632. Under Section 632, a party is free to record non-confidential

6 communications transmitted via any wireless or landline telephone. Although that conduct is

7 lawful under Section 632, Plaintiff's interpretation would make it unlawful under Section 632.7

8 for wireless telephonic communications.

9

10     C.    Plaintiff Fails to Allege that She Did Not Consent to Eddie Bauer's Receipt

11         of her Communication.

12

13     Although Plaintiff plainly alleges that Eddie Bauer intentionally recorded her call without

14 her consent, she does not allege that Eddie Bauer received the calls without her consent. To the

15 contrary, she alleges that she voluntarily initiated her communications with Eddie Bauer, using a

16 wireless telephone to call Eddie Bauer's toll free number to place an order. (Complaint, ¶ 15.)

17 Having failed to allege the necessary facts to establish a violation of Section 632.7, Plaintiff

18 cannot pursue a private right of action under Section 637.2 (allowing a private civil right of

19 action by a person injured).

20

21     D.    The Court Sustains the Demurrer Without Leave to Amend the Existing

22         Causes of Action but With 30 days Leave to Add a Cause of Action based on

23         Section 632.

24

25     A Court granting leave to amend allows a plaintiff to amend the existing cause of action.

26 With respect to Plaintiff's single cause of action under Section 632.7, the Court sustains the

27 demurrer without leave to amend. Having admitted that she initiated the telephone call, Plaintiff

28

has no factual basis for alleging lack of consent. In her Supplemental Brief submitted after the September 28, 2015 hearing, Plaintiff requested leave to amend to plead a Section 632 claim. The Court grants 30 days leave to amend to plead a new cause of action for violation of Section 632.

E.     Defendant's Motion to Strike Is Moot

Having sustained Defendant's demurrer to the complaint, the Court finds that the motion to strike is moot.

**THE COURT SETS A FURTHER STATUS CONFERENCE FOR FEBRUARY 29, 2016 AT 11:00 A.M.**

Dated this 1st day of December, 2015

**AMY D. HOGUE, JUDGE**

_____

Amy D. Hogue
Judge of the Superior Court

# EXHIBIT J

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF VENTURA
## VENTURA

## MINUTE ORDER

DATE: 03/11/2014               TIME: 08:20:00 AM        DEPT: 41

Judicial Officer Presiding: Vincent O'Neill
CLERK: Julie Childs
REPORTER/ERM: None

CASE NO: **56-2013-00446134-CU-BT-VTA**
CASE TITLE: **Furman vs. Station Casinos LLC**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Business Tort

**EVENT TYPE**: Demurrer (CLM) in behalf of deft
MOVING PARTY: Station Casinos LLC
CAUSAL DOCUMENT/DATE FILED: Demurrer, 02/05/2014

**EVENT TYPE**: Motion to Strike portions of complaint
MOVING PARTY: Station Casinos LLC
CAUSAL DOCUMENT/DATE FILED: Motion to Strike portions of plaintiffs complaint, 02/05/2014

**APPEARANCES**
Zev B Zysman, counsel, present for Plaintiff(s).
Edward D Totino, counsel, present for Defendant(s).

At 8:40 a.m., court convenes in this matter with all parties present as previously indicated.

Counsel have read and considered the court's tentative rulings.

Matter submitted to the Court with argument.

The Court finds/orders:

**Ruling on demurrer by Defendant Station Casinos':**

The court adopts the tentative ruling as to the 1st Cause of Action only.

Grant Defendant's request for judicial notice

Sustain Defendant Station Casinos' demurrer without leave to amend as to the first cause of action for violation of Penal Code §632. Plaintiff has alleged a cellular telephone call placed to Defendant. The Court finds that cellular telephone calls are not covered by Penal Code §632.

The court modifies the tentative ruling as to the 2nd Cause of Action as follows:

OVERRULED as to the second cause of action.

**Ruling on Defendant Station Casinos' motion to strike:**

GRANTED as to any language claiming $5000 "per violation".

Plaintiff is granted 20 days leave to amend to allege a claim for statutory damages of $5000 for each class member.

Defendant to file the answer to the amended complaint within the statutory time.

Notice to be given by clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2016, a copy of the foregoing **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION BY DEFENDANTS HSBC CARD SERVICES INC. AND HSBC TECHNOLOGY & SERVICES (USA) INC. TO DISMISS COMPLAINT** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/ Shannon E. Dudic*

Shannon E. Dudic

LA 52027999